MICHAEL W. PANAGAKOS *vs.* WALTER COLLINS & another.[1]

No. 10-P-1006.

Bristol. February 3, 2011. - October 27, 2011.

Present: CYPHER, SIKORA, & HANLON, JJ.

*Damages,* Mitigation, Liquidated damages. *Contract,* Lease of real estate, Rent acceleration clause, Provision for liquidated damages. *Practice, Civil,* Burden of proof.

Discussion of the standard of review applicable to findings of fact and legal conclusions made at a jury-waived trial. [701-702]

At the trial of a civil action in which a judge found in favor of the plaintiff lessor on, inter alia, his claim that the defendant lessee restaurant owner committed a breach of a personal guaranty by failing to pay rent, the judge in his assessment of damages erred in considering the plaintiff's failure to mitigate, where a rent acceleration clause contained in the lease may have constituted an enforceable liquidated damages provision. [702-703]

CIVIL ACTION commenced in the Superior Court Department on September 21, 2007.

The case was heard by *Thomas F. McGuire, Jr.,* J.

*Gregory J. Koldys* for the plaintiff.

*Timothy F. Duffy* for the defendants.

HANLON, J. The defendant Walter Collins (Collins) leased property for his restaurant business, McWal, Inc. (McWal), from the plaintiff, Michael Panagakos, for several years. During the course of renegotiating the lease, Collins gave Panagakos a personal written guaranty. A little more than a year later, the restaurant closed and the defendant left the premises with three and one-half years left on the lease. Panagakos sued Collins to recover for breach of the written guaranty and to set aside a fraudulent conveyance of real estate between the defendant and his wife. The trial judge, in careful findings, entered a judgment

---

[1] Jean M. Collins.

against the defendants on both counts. In determining the damages owed, however, the judge considered what he found to be the plaintiff's failure to mitigate his damages. Panagakos appeals, arguing the judge erred in addressing the issue of mitigation of damages at all, on the ground that the defendants had failed to plead it as a defense, and he argued further that the judge's determination that he failed to mitigate was error.[2] We reverse.

*Background.* In September, 1995, McWal leased from Panagakos a parcel of land in Dartmouth, together with a building and certain equipment, to use as a restaurant.[3] The written lease, which provided for an initial term of five years, with the right to extend for three consecutive five-year periods, was signed by the defendant Walter Collins, in his capacity as president of McWal. The options to extend the lease were to be exercised by written notice to Panagakos at least six months prior to the expiration of the then-current lease term. The judge found that McWal failed to notify Panagakos in a timely manner of a desire to extend the lease in 2000. In December, 2000, the parties negotiated a new lease, at a higher rent, with an option to extend for a single additional five-year term. Walter Collins also executed a new guaranty.[4]

In 2005, McWal failed again to notify Panagakos in a timely manner that it wished to extend the lease. The parties exchanged written correspondence in January, 2006, in which they agreed to extend the lease from January 1, 2006, through December 31, 2010, at an annual base rent of $133,000. In March, 2007,

---

[2]The defendants have not appealed from the judgment that a property in West Roxbury was fraudulently conveyed from Walter Collins to Jean Collins in September of 2007, in violation of G. L. c. 109A, the Uniform Fraudulent Transfer Act. Nor does Walter Collins appeal from the judgment of liability on his personal guaranty.

[3]McWal operated a "T.K. O'Malley's" restaurant on the property until 2007. McWal also leased a property in Fall River from the plaintiff, where McWal operated a second T.K. O'Malley's restaurant.

[4]Under the terms of the "Guarantee," Walter Collins agreed personally to "fully guarantee the full and faithful performance of all of the obligations, duties, and liabilities of the Tenant in the foregoing lease. No subletting of the premises or assignment of said lease, consented to by the Landlord nor the waiver by the Landlord of any breach by the Tenant shall in any manner void or mitigate this guarantee."

McWal failed to pay the monthly rent, and in April, 2007, Pana-
gakos instituted a summary process action.[5]

Collins told Panagakos that he was interested in selling the
restaurant; he also engaged an experienced broker, Paul Tollino,
to market it. Panagakos indicated that he would agree to an as-
signment of the remaining three and one-half years of the lease,
provided McWal remained current on the rental payments until
an assignment could be made. McWal's attorney contacted
Panagakos's attorney in May to accept those conditions.

Tollino located a potential buyer for both restaurants, see
note 3, *supra*, but Panagakos deemed the buyer an unacceptable
tenant and the offer fell through. Tollino found a second party,
Michael Barrett, who was interested in purchasing both the Fall
River and Dartmouth restaurant operations, and Panagakos was
satisfied with his financial information. Barrett, however, was
concerned with the condition of the Dartmouth restaurant and
informed Tollino that repairs were needed to the parking lot, the
roof, the air conditioning system, a leaky front door, and some
rotted wood. In June, 2007, through attorneys, Panagakos and
Barrett discussed the repairs, but Panagakos indicated that they
were not his responsibility and that he would only agree to
lease the building "as is."[6]

Barrett offered to purchase both restaurants for $300,000, but
given the anticipated $400,000 in repairs that were required at
the Dartmouth restaurant, he was unwilling to complete the deal
unless the lease term was longer than the remaining three and

---

[5] "A summary process action under G. L. c. 239 is an action to recover
possession." *United Co.* v. *Meehan*, 47 Mass. App. Ct. 315, 319 (1999). "The
statute . . . allows a summary process action to pursue rent due, but it is rent
due from a defendant who was in possession of the property in question, or at
least in possession of the property at the time the suit commenced." *Cummings
Properties, LLC* v. *Cepoint Networks, LLC*, 78 Mass. App. Ct. 287, 289 (2010).

[6] The lease provided that the tenant, at his sole cost and expense, would keep
and maintain the premises, equipment, pipes, plumbing, wires, glass, building,
and surrounding grounds in good repair. On the other hand, the lease provided
that the "Landlord shall be responsible, at Landlord's sole cost and expense, to
make all exterior structural repairs to the building and repairs to the parking lot
which are reasonably necessary to keep the same in good repair, order and
condition, provided that Tenant shall reimburse Landlord for any such repairs
which are required because of any condition caused by the replacement or
improvement in negligence, acts, omissions, or misconduct of Tenant."

one-half years.[7] Tollino asked Panagakos if he would extend the term of the lease to fifteen to twenty years, but Panagakos would agree only to allow Barrett to finish the unexpired term under the existing lease; he would consider an extension only thereafter. Tollino was unsuccessful in his attempts to arrange a meeting among Barrett, Panagakos, and himself,[8] and, in the end, Barrett decided not to purchase the Dartmouth restaurant operation. He did buy the Fall River restaurant.

In June, McWal again failed to pay the rent and Panagakos's attorney informed Collins in writing that Panagakos would hold Collins personally liable under the guaranty he had signed. On June 20, 2007, the parties executed an agreement for judgment in the summary process action. The parties agreed at the time that Panagakos was owed $32,417 in damages. Under the terms of the agreement for judgment, McWal "acknowledge[d] that additional damages [might] accrue under the lease and that th[e] judgment [did] not preclude [Panagakos] from claiming those future damages."[9]

---

[7]The judge credited Tollino's testimony "that in order to make such an investment financially feasible, a restaurant operator would need a lease term of twenty to twenty-five years."

[8]Tollino also conveyed an offer from Collins to give Panagakos $75,000 from the sale proceeds, if he allowed the sale to Barrett; Panagakos was not interested.

[9]Under the "Default/Acceleration" clause of the lease, the "Tenant's failure to pay any rent or additional rent within ten (10) days after the date on which the same shall become due" constituted a default. The clause further provides:

"Upon the occurrence of any such default, the Landlord, in addition and without prejudice to any other remedies, may elect that the rental payments due hereunder shall be accelerated and the entire amount of rental be due immediately and/or enter upon the Premises and without any court order or other process of law may repossess the Premises and the Equipment either with or without notice to the Tenant and expel the Tenant and anyone claiming under it without being guilty of any manner of trespass and without prejudice to any other remedies available to Landlord. Any such repossession shall not constitute a termination of this Lease unless the Landlord so notifies the Tenant in writing. The Landlord may relet the Premises and/or the Equipment to any other person or persons upon such terms and conditions as the Landlord shall determine, in which event there shall be due from the Tenant and Tenant will immediately pay to the Landlord, the difference between the total amount of rents to be received from any third person and the total unpaid rental provided to be paid herein, plus all costs and expenses of

After McWal vacated the Dartmouth premises on June 25, 2007, Panagakos did not lease it to any other tenant. He posted a sign at the building noting that the property was available for lease, and he occasionally received calls from interested parties. Aside from the monthly rent, Panagakos incurred other damages due to McWal's default on the lease, including unpaid water, sewer, and electric bills, plumbing charges to "winterize" the building, landscaping and lawn mowing charges, and cleaning charges after McWal vacated the building. McWal has made no further payments to Panagakos, but Panagakos was in possession of McWal's $14,500 security deposit at the time of the default. McWal has no further assets and has filed for bankruptcy.

The judge found that if Panagakos wished to hold McWal and, therefore, Collins, liable for future damages, "he was under an affirmative duty to make reasonable efforts to mitigate those future damages . . . includ[ing] ensuring that the premises are in repair as well as leasing for a term of sufficient length to attract a worthwhile tenant." Because of what the judge described as a failure to act reasonably to mitigate, he ruled that Panagakos could only "recover damages that he would have incurred had he accepted the reasonable alternative of leasing to Barrett." The judge found that amount would be two months rent.[10]

*Discussion.* a. *Standard of review.* On review of a jury-waived trial, "[t]he findings of fact of the judge are accepted unless they are clearly erroneous," and "[w]e review the judge's legal conclusions de novo." *T.W. Nickerson, Inc.* v. *Fleet Natl. Bank,* 456 Mass. 562, 569 (2010). See *Twin Fires Inv., LLC* v. *Morgan Stanley Dean Witter & Co.,* 445 Mass. 411, 420 (2005). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left

_____

the Landlord in repossessing, releasing, transporting, repairing, selling, or otherwise handling the Premises or the Equipment. In the event that the releasing results in a surplus, such surplus shall be paid to the Tenant."

[10]Including the previous amount of rent owed by McWal, $32,417.48, plus the two additional months rent, the judge found the premises would have been vacant if Panagakos had moved forward with Barrett's offer, and subtracting the retained security deposit, the total damages owed were $41,460.36.

with the definite and firm conviction that a mistake has been committed. . . . On the other hand, to ensure that the ultimate findings and conclusions are consistent with the law, we scrutinize without deference the legal standard which the judge applied to the facts. . . . Thus, the 'clearly erroneous' standard of appellate review does not protect findings of fact or conclusions based on incorrect legal standards." (Citations omitted.) *Kendall* v. *Selvaggio,* 413 Mass. 619, 620-621 (1992).

b. *Mitigation of damages.* Panagakos argues that the judge erred in determining he had an obligation to mitigate his damages. In his view, at least since the holdings of the Supreme Judicial Court in *Cummings Properties, LLC* v. *National Communications Corp.,* 449 Mass. 490, 494 (2007), and *NPS, LLC* v. *Minihane,* 451 Mass. 417, 423 (2008), the presence of a default/ acceleration clause, such as the one contained in the lease, makes irrelevant the issue of mitigation of damages, because an acceleration clause is an enforceable liquidated damages provision. Therefore, he argues, he is entitled to the full amount of rent due under the lease, in addition to his other damages.

In *Cummings Properties, LLC* v. *National Communications Corp., supra,* the court held that "[a] rent acceleration clause, in which a defaulting lessee is required to pay the lessor the entire amount of the remaining rent due under the lease, may constitute an enforceable liquidated damages provision so long as it is not a penalty." The court emphasized the "well settled" principle "that a contract provision clearly and reasonably establishing liquidated damages should be enforced so long as it is not so disproportionate to anticipated damages as to constitute a penalty." *Ibid.* "[T]he burden of establishing that the damages to which it agreed are disproportionate to a reasonable estimate of those actual damages likely to result from a breach" falls on the party challenging the provision. *Id.* at 494-495.[11] On facts very similar to those before us, the court concluded that "the

___

[11]In *Cummings,* the court did "not decide whether the failure to mitigate damages might ever affect the enforceability of a liquidated damages provision" because the defendant did not plead the issue below and "thus did not preserve the issue for appellate review." 449 Mass. at 497. Citing this language, Panagakos as noted above, also argues that the defendants failed to plead mitigation of damages as an affirmative defense. In the present case, however, it is clear that even if the defendants did not plead failure to mitigate, evidence

agreed rental value of the property over the remaining life of the lease, decreasing in amount as the lease term came closer to expiration . . . appears to be a reasonable anticipation of damages that might accrue from the nonpayment of rent." *Id.* at 496-497.

In *NPS, LLC* v. *Minihane*, 451 Mass. 417, 423 (2008), the court went further, holding that "in the case of an enforceable liquidated damages provision, mitigation is irrelevant and should not be considered in assessing damages." In reaching that conclusion, the court noted, "[w]hether a liquidated damages provision in a contract is an unenforceable penalty is a question of law. . . . The burden of showing that a liquidated damages provision is unenforceable rests with the party challenging enforcement of the provision (here the defendant) . . . and we resolve reasonable doubts in favor of the aggrieved party (here, [the plaintiff])." (Citations omitted; footnote omitted.) *Id.* at 419-420. The court reasoned that if the parties, in the default/acceleration clause, agreed in advance on a sum that reasonably estimated the potential damages from a material breach of the commercial lease, they "exchange[d] the opportunity to determine actual damages after a breach, including possible mitigation, for the 'peace of mind and certainty of result' afforded by a liquidated damages clause." *Id.* at 423, quoting from *Kelly* v. *Marx*, 428 Mass. 877, 881 (1999).

The combined force of these cases constrains us to conclude that the trial judge erred when he considered Panagakos's failure to mitigate in his assessment of damages from Collins's acknowledged breach of the lease. We therefore vacate the damages award and remand for further proceedings consistent with this opinion. At any further proceeding, Collins shall bear the burden of proving that the accelerated rental figure constitutes a penalty by reason of its disproportionality to a reasonable estimate of actual damages. See *Cummings Properties, LLC* v. *National Communications Corp.*, *supra* at 496-497.

*So ordered.*

of Panagakos's failure to mitigate his damages was admitted without objection, and the issue was thoroughly litigated. There is no reason to believe that Panagakos was surprised or otherwise prejudiced by lack of notice.