CUMMINGS PROPERTIES, LLC *vs.* NATIONAL COMMUNICATIONS
CORPORATION.

Middlesex. May 9, 2007. - July 17, 2007.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, & CORDY, JJ.

*Damages,* Liquidated damages. *Contract,* Lease of real estate, Rent accelera-
tion clause. *Practice, Civil,* Burden of proof.

This court concluded that an accelerated rent clause in a commercial lease
    negotiated by sophisticated parties, which clause was applicable to the
    breaches of multiple covenants in the lease, constituted an enforceable
    liquidated damages provision as applied to a default in the payment of rent
    (which the parties agreed constituted a significant breach of the lease), where
    the defendant tenant, which contested the validity of the clause, failed to
    satisfy its burden to show that the provision was a penalty. [494-497]

SUMMARY PROCESS. Complaint filed in the Woburn Division of
the District Court Department on September 29, 2003.

A proceeding for assessment of damages was heard by
*Jonathan Brant,* J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Susan F. Brand* for the plaintiff.

*Daniel Briansky* for the defendant.

CORDY, J. In this case we must determine whether an acceler-
ated rent provision in a commercial lease constitutes an enforce-
able liquidated damages provision where the tenant's breach,
the failure to pay rent, is deemed by the lease (and agreed by
the parties) to be "significant," but where, on its face, the
provision might also apply to breaches of less significance, to
which its application would be disproportionate. A judge in the
District Court awarded the landlord damages as calculated by
the accelerated rent provision, and possession of the leased
premises. The Appellate Division affirmed the judgment of pos-
session but vacated the award of damages on the ground that our

decision in *Commissioner of Ins.* v. *Massachusetts Acc. Co.*, 310 Mass. 769 (1942) (*Commissioner of Ins.*), barred enforcement of a liquidated damages provision that, by the terms of the lease, could apply to both trivial as well as material breaches. On remand to the District Court, the judge determined and awarded the landlord its actual damages, a sum six per cent smaller than the liquidated damages award. This appeal followed. We conclude that the liquidated damages provision was enforceable and reinstate the original award of damages.

1. *Background.* The following facts are undisputed. On March 28, 1991, Cummings Properties, LLC (Cummings), as landlord, entered into a lease with National Communications Corporation (National), as tenant, for the premises located at 52 Cummings Park in Woburn. Both National and Cummings are sophisticated commercial entities. National paid a security deposit of $15,400 to Cummings as set forth in the lease. The term of the lease was five years, commencing on May 1, 1991, and extending to April 30, 1996. On January 25, 1996, the lease was extended for an additional five years, to April 30, 2001.[1] On March 7, 2000, the parties executed another lease extension, extending the term for the lease to March 30, 2005.[2] A final extension was executed on February 27, 2002, extending the term until March 30, 2006.

In section 19 of the lease, the "parties agree" that the nonpayment of rent or the failure to make other payments therein specified would be a "significant breach of the lease," and that the "payment of rent in monthly installments is for the sole benefit and convenience of [National]." Section 19 also provides that in the event of an uncured default in the payment of rent or other payments, "the entire balance of rent which is due [under the lease] shall become immediately due and payable as liquidated damages."[3] Section 27 of the lease contains a severability clause that provides: "The invalidity or unenforceability

---

[1]The lease was also amended in various respects on June 8, 1992; November 15, 1993; and December 2, 1993.

[2]The lease had also been amended in May, 1996, and May, 1998. Those amendments pertained to changes in the size of the leased premises, the amount of monthly rent payments, certain structural changes to be made to the premises, and use of overnight parking spaces. There were no changes to the provisions at issue here.

[3]In pertinent part, Section 19 provides: "If LESSEE shall default in the

of any provision of this lease shall not affect or render invalid or unenforceable any other provision hereof."

National failed to pay the monthly rent (then $16,426.36) and other charges due under the lease for the month of August, 2003. By means of a letter dated August 19, 2003, Cummings served National with a notice of rent due.[4] When National failed to cure its default within ten days and failed to pay the rent and other charges due for September, Cummings terminated the lease and, on September 29, 2003, brought a complaint for summary process in the Woburn Division of the District Court Department.

In its complaint, Cummings sought an accelerated rent payment in the amount of $525,643.52.[5] In its answer to Cummings's complaint, National admitted to owing rent for August and September, 2003, and asserted, as affirmative defenses, that Cummings had not properly terminated National's tenancy before commencing the summary process action,[6] and that the rent acceleration clause in the lease constituted an unenforceable

---

payment of the security deposit, rent, taxes, or any substantial invoice for goods and/or services or other sum herein specified, and such default shall continue for ten (10) days after written notice thereof, and, because both parties agree that nonpayment of said sums when due is a significant breach of the lease, and, because the payment of rent in monthly installments is for the sole benefit and convenience of LESSEE, then in addition to the foregoing remedies [retaking possession of the leased premises] the entire balance of rent which is due hereunder shall become immediately due and payable as liquidated damages."

[4]Specifically, the notice stated that the failure to pay the rent due within ten days "shall constitute a substantial default of the lease, require you to quit the premises and subject you to the rent acceleration provisions of Section 19. Specifically, failure to make full payment within 10 days shall result in Cummings Properties, LLC accelerating the rent through the end of the lease term, declaring the term of the lease ended without further notice to you, and taking appropriate legal action, including Summary Process (eviction) proceedings, to recover possession of the premises and collect the entire balance of accelerated rent in the amount of $525,643.52."

[5]This amount represented the thirty-two months remaining on the lease multiplied by a monthly rent of $16,426.36. Although additional financial obligations would have been owed or incurred by National under the lease if it had remained in effect, such as utility charges, increases in real estate taxes, and the cost of carrying insurance for the premises, National was relieved of these obligations as a consequence of Cummings's exercise of the rent acceleration provision.

[6]The issue of the proper termination of the lease was resolved in Cummings's favor in the trial court and has not been appealed.

penalty.[7] The parties filed a stipulation of facts and each requested rulings of law. A bench trial was held on October 30, 2003. On December 1, 2003, the judge entered findings for Cummings and awarded it possession of the premises and damages in the amount of $525,643.52 plus interest and costs, totaling $536,760.82. National appealed to the Appellate Division of the District Court Department, which affirmed the judgment for Cummings for possession of the premises but vacated the award of damages. The Appellate Division concluded that under the terms of the lease, the acceleration of rent provision would apparently apply both to breaches of major importance, such as the failure to pay rent, and to ones of minor financial importance (or of ready calculation), such as the failure to pay a property tax increase.

In declaring the rent acceleration clause unenforceable, the Appellate Division relied on this court's holding in *Commissioner of Ins., supra* at 771, that, "where a lease contains many covenants of varying importance, and where a breach of some of them would result in a loss which could be accurately determined and would be inconsiderable in comparison with the amount required by the lease to be paid although the damage resulting from a breach of some of the other covenants would be substantial and difficult exactly to ascertain, the sum designated to be paid upon a breach of any of these covenants is a penalty and not liquidated damages." It noted, however, that *Commissioner of Ins.* was decided in 1942, and that numerous authorities had reached a different outcome in the intervening years.

On remand to the District Court, a hearing was scheduled to assess actual damages suffered by Cummings. On July 21, 2005, a different judge entered judgment for Cummings in the amount of $492,007.94.[8] Cummings appealed from the judgment of the Appellate Division that the liquidated damages clause was unenforceable, and from the judge's July, 2005, award of dam-

[7]National also included a counterclaim under G. L. c. 93A, but the judge granted a motion to strike the counterclaim on October 7, 2003. There is no further mention of this claim in the record.

[8]This amount accounted for the amount of rent owed by National under the lease, including the months the premises remained vacant, the costs Cummings incurred in finding replacement tenants and altering the premises to accommodate these tenants, and an offset for the amount of rent Cummings received from the replacement tenants.

ages to the extent it was premised on the Appellate Division's ruling. We transferred the case from the Appeals Court on our own motion.

2. *Discussion.* It is well settled that a contract provision clearly and reasonably establishing liquidated damages should be enforced so long as it is not so disproportionate to anticipated damages as to constitute a penalty. *TAL Fin. Corp.* v. *CSC Consulting, Inc.*, 446 Mass. 422, 431 (2006), citing *Kaplan* v. *Gray*, 215 Mass. 269, 270-273 (1913). If, at the time the contract was made, actual damages were difficult to ascertain and the sum agreed on by the parties as liquidated damages represents a reasonable forecast of damages expected to occur in the event of a breach, it will usually be enforced. *Id.* at 431-432.

A rent acceleration clause, in which a defaulting lessee is required to pay the lessor the entire amount of the remaining rent due under the lease, may constitute an enforceable liquidated damages provision so long as it is not a penalty. See, e.g., *Commissioner of Ins.*, *supra* at 771 (acceleration clause constituted penalty where clause was applicable to breach of any covenant set forth in lease, including those where damage could be accurately determined and were inconsiderable compared with amount of rent acceleration); *Ganary* v. *Linker Realty Corp.*, 131 N.J.L. 317, 320 (1944) (enforcing rent acceleration clause in commercial lease); *Fifty States Mgmt. Corp.* v. *Pioneer Auto Parks, Inc.*, 46 N.Y.2d 573, 577 (1979) (rent acceleration clause in commercial lease enforceable absent showing of fraud, exploitive overreaching, or unconscionable conduct); *Pierce* v. *Hoffstot*, 211 Pa. Super. 380, 383-384 (1967) (upholding enforcement of rent acceleration clause, noting such clauses "have long been held valid"). See also Restatement (Second) of Property (Landlord and Tenant) § 12.1 comment k, at 394 (1977) ("parties may provide in the lease that if the tenant defaults in the payment of rent or fails in some other way to perform his obligations under the lease, the total amount of rent payable during the term of the lease shall immediately become due and payable"). While any reasonable doubt whether a provision constitutes a valid liquidated damages clause is to be resolved in favor of the aggrieved party, *TAL Fin. Corp.* v. *CSC Consulting, Inc.*, *supra* at 430, the party challenging it bears the burden of establishing that the damages

to which it agreed are disproportionate to a reasonable estimate of those actual damages likely to result from a breach. *Id.* See *XCO Int'l, Inc.* v. *Pacific Scientific Co.*, 369 F.3d 998, 1003 (7th Cir. 2004) (*XCO Int'l, Inc.*), and cases cited; *Honey Dew Assocs., Inc.* v. *M & K Food Corp.*, 241 F.3d 23, 27 (1st Cir. 2001); 24 S. Williston, Contracts § 65.30, at 355-356 (4th ed. 2002) (Williston).

In *Commissioner of Ins., supra* at 771, we held that where a liquidated damages clause establishes the same damages for breach of any provision within the contract, regardless of the severity of the breach (or the difficulty of calculation), it will be struck down as a penalty even for those breaches for which it would not be disproportionate. Cummings urges us to update our jurisprudence in light of the near unanimous trend toward upholding liquidated damages clauses in agreements between sophisticated parties, and to adopt a presumption against interpreting such clauses as penalties. We agree that "[t]he rule against penalty clauses, though it lingers, has come to seem rather an anachronism, especially in cases in which commercial enterprises are on both sides of the contract." *XCO Int'l, Inc., supra* at 1002. See *id.* at 1002-1003 (collecting cases); *American Multi-Cinema, Inc.* v. *Southroads, LLC*, 119 F. Supp. 2d 1190, 1206-1207 (D. Kan. 2000), and cases cited; *JMD Holding Corp.* v. *Congress Fin. Corp.*, 4 N.Y.3d 373, 380-381 (2005). See also 3 E.A. Farnsworth, Contracts § 12.18, at 303-304 (3d ed. 2004) (Farnsworth) ("trend favors freedom of contract through the enforcement of stipulated damage provisions as long as they do not clearly disregard the principle of compensation"); Williston, *supra* at § 65:27, at 339 ("An agreement for a fixed amount of damages for failure to carry out . . . a property lease will generally be treated as an enforceable liquidated-damages provision, under the rules generally applicable to determining the validity of such provisions"); Restatement (Second) of Contracts § 356 comment a, at 157 (1981) ("parties to a contract may effectively provide in advance the damages that are to be payable in the event of breach as long as the provision does not disregard the principle of compensation").

Accordingly, we modify our holding in *Commissioner of Ins.* to the extent that in the case of a commercial agreement be-

tween sophisticated parties containing a liquidated damages provision applicable to breaches of multiple covenants, it may be presumed that the parties intended the provision to apply only to those material breaches for which it may properly be enforced. *United Air Lines, Inc.* v. *Austin Travel Corp.*, 867 F.2d 737, 741 (2d Cir. 1989). See *XCO Int'l, Inc., supra* at 1005 (proper judicial remedy where provision written to apply to any breach is to reform clause to limit it to those breaches "for which it constituted a reasonable specification of damages"); 11 A. Corbin, Contracts § 58.14, at 488 (rev. ed. 2005) (liquidated damages clause that undercompensates for some breaches and overcompensates for others not necessarily struck down when devised by sophisticated parties); Farnsworth, *supra* at § 12.18, at 311 n.31 (collecting cases). This modification is consistent with the goal of resolving disputes "efficiently by making it unnecessary to wait until actual damages from a breach are proved" and helps to eliminate uncertainty and costly litigation. *Kelly* v. *Marx*, 428 Mass. 877, 881 (1999). It is also consistent with the intention of the parties in the present case as expressed in the language they agreed to in the liquidated damages and severability clauses of the lease.

In the present case, the lease provides for rent acceleration if National defaults in the "payment of the security deposit, rent, taxes, or any substantial invoice for goods and/or services," defaults that the parties agreed warranted the application of the rent acceleration clause. We concern ourselves, however, only with the default in the payment of rent and need not decide whether the parties' agreement in the lease that other types of defaults were "significant" is determinative of whether that provision would be enforceable for the breach of any or all of them. It is apparent from the stipulation, and National has not produced evidence to the contrary, that at the time the lease was entered into, the parties could not have foreseen when in the lease term a breach for nonpayment of rent would occur, what the commercial rental market would be at that time, or what the cost of finding another tenant and the length of time the property might remain vacant might be. In addition, to the extent that the liquidated damages amount represented the agreed rental value of the property over the remaining life of the lease, decreasing

in amount as the lease term came closer to expiration, it appears to be a reasonable anticipation of damages that might accrue from the nonpayment of rent.[9] In contrast, the trial record reflects only an assertion by National that the liquidated damages provision was an unenforceable penalty as a matter of law. As the party contesting its validity, National has failed to satisfy its burden to show that the liquidated damages clause is a penalty, see *TAL Fin. Corp.* v. *CSC Consulting, Inc.*, 446 Mass. 422, 430 (2006), that is, that the amount it agreed to pay was disproportionate to any reasonable estimate of likely damages at the time the lease was executed.

National finally argues that enforcing the liquidated damages provision in this case would be "inequitable, oppressive, and cause a serious miscarriage of justice" because Cummings did not comply with its duty to mitigate damages. We need not decide whether the failure to mitigate damages might ever affect the enforceability of a liquidated damages provision,[10] as National did not plead below (as an affirmative defense) that Cummings violated its duty to mitigate damages, and thus did not preserve the issue for appellate review. See Mass. R. Civ. P. 8 (c), 365 Mass. 749 (1974); *Clamp-All Corp.* v. *Foresta*, 53 Mass. App. Ct. 795, 811 (2002).

3. *Conclusion.* For the foregoing reasons, we vacate the award

---

[9]Under the terms of the lease, the parties agreed that "payment of rent in monthly installments is for the sole benefit and convenience of LESSEE." Thus, the full amount of rent owed under the lease was due at its commencement, and the acceleration clause only required National to pay Cummings what it agreed to pay up front for the entire term of the lease. See *Fifty States Mgmt. Corp.* v. *Pioneer Auto Parks, Inc.*, 46 N.Y.2d 573, 578 (1979) (acceleration clause costing defaulting tenant interest it would have earned by paying rent monthly no more penalty than contracting to pay entire lease amount at outset of lease term).

[10]See, e.g., *Burst* v. *R.W. Beal & Co.*, 771 S.W.2d 87, 91-92 (Mo. Ct. App. 1989) (aggrieved party has no duty to show mitigated damages where liquidated damages clause enforceable); *Federal Realty Ltd. Partnership* v. *Choices Women's Med. Ctr., Inc.*, 289 A.D.2d 439, 442 (N.Y. 2001) (finding that enforceable liquidated damages provision precluded reduction in damages for alleged failure to mitigate actual damages). See also 22 Am. Jur. 2d Damages § 538, and cases collected (issue of mitigation of damages not relevant, and doctrine will not be applied to defeat terms of enforceable agreement providing for liquidated damages).

of actual damages and reinstate the award of liquidated damages.

*So ordered.*