CUMMINGS PROPERTIES vs. HINES, 102 Mass. App. Ct. 28

 
 CUMMINGS PROPERTIES, LLC vs. DARRYL C. HINES.

102 Mass. App. Ct. 28
 September 9, 2022 - December 5, 2022

Court Below: Superior Court, Middlesex County
Present: Shin, Hand, & Brennan, JJ.

 

Further appellate review granted, 491 Mass. 1104 (2023).

Real Property, Lease. Contract, Lease of real estate, Rent acceleration clause, Provision for liquidated damages. Damages, Liquidated damages, Mitigation. Guaranty. Penalty.

In an action brought by a commercial landlord against the guarantor of a lease following the tenant's default on paying rent just two months into the lease's five-year term, the judge erred in concluding that the rent acceleration clause in the lease entitled the landlord to liquidated damages equal to the amount of rent due under the full term of the lease, where the clause was not a reasonable forecast of damages expected to occur in the event of a breach, given that it permitted the landlord to repossess the premises, relet it, and collect rent from the new tenant, as well as recover the full five years of rent from the original tenant (regardless of when in the lease period the default occurred and regardless of whether or when the landlord found a new tenant), without having to account for the rent received from the new tenant during the term of the original lease. [31-37]

Civil action commenced in the Superior Court Department on January 6, 2020. 

 The case was heard by Christopher K. Barry-Smith, J. 

 Joseph B. Simons for the defendant.

 Joseph P. Mingolla for the plaintiff.

 SHIN, J. At issue in this appeal is whether a rent acceleration clause in a commercial lease is enforceable as a liquidated damages provision or unenforceable as a penalty. After the tenant defaulted on paying rent just two months into a five-year lease, the landlord, Cummings Properties, LLC (Cummings), brought suit in the Superior Court against the guarantor of the lease, Darryl Hines, seeking to recover the remaining rent as liquidated damages. Although Cummings was able to relet the property less than one year after the tenant's default, Cummings claimed that it was still entitled to liquidated damages equal to the amount of rent due under the full term of the lease. Following a jury-waived trial, the judge agreed, and judgment entered accordingly. We 

 Page 29 

conclude that the acceleration clause is an unenforceable penalty and thus reverse.

 Background. The relevant facts are uncontested. Hines is the owner and the sole officer and director of Massachusetts Constable's Office Inc. (MCO), a company that provides process service. Before founding MCO, Hines, a self-taught tax preparer and accountant, operated a tax-preparation business out of a small office he rented from a noncommercial landlord in Salem. Hines later began operating MCO out of the same office. 

 In early 2016 MCO secured a contract with the Department of Revenue (DOR). This led Hines to seek out new office space in Woburn, where he anticipated that the majority of MCO's business with DOR would occur. Cummings owns over eleven million square feet of commercial real estate in Woburn, including offices near DOR.

 On April 15, 2016, MCO and Cummings entered into a commercial lease for MCO to occupy one of Cummings's Woburn properties (premises). The term of the lease was five years, beginning on June 1, 2016, and the base rent was $16,374 per year. While the rent was payable in monthly instalments of $1,364.50, paragraph E of the lease included the following "[d]efault; [r]emedies" clause, which allowed Cummings to both terminate the lease and accelerate the rent if MCO defaulted on a payment and failed to cure within ten days:

"In the event that . . . LESSEE defaults in the observance or performance of any term herein, and such default is not corrected within 10 days after written notice thereof, then LESSOR shall have the right thereafter, without demand or further notice, to declare the term of the lease ended, and/or to remove LESSEE's effects, without liability, including for trespass or conversion, and without prejudice to any other remedies. If LESSEE defaults in the payment of any rent, and such default continues for 10 days after written notice thereof, and, because both parties agree that nonpayment of said sums is a substantial breach of the lease, and, because the payment of rent in monthly installments is for the sole benefit and convenience of LESSEE, then, in addition to any other remedies, the net present value of the entire balance of rent due herein as of the date of LESSOR's notice, using the published prime rate then in effect, shall immediately become due and payable as liquidated damages, since both 

 Page 30 

parties agree that such amount is a reasonable estimate of the actual damages likely to result from such breach."

Hines signed the lease on behalf of MCO. He also signed a personal guaranty, which obligated him to "personally and unconditionally guarantee[] the prompt payment of rent by LESSEE and the performance by LESSEE of all financial and nonfinancial obligations arising out of . . . this lease."

 Less than a month after the lease was executed, DOR suspended its contract with MCO. With MCO now in financial straits, Hines contacted Cummings to explore his options with regard to the lease. Cummings refused to release MCO from the lease but did allow MCO to pay the security deposit of $2,700 in three equal instalments. The agreement was memorialized in an amendment to the lease executed by the parties on June 13, 2016.

 In July 2016, the second month of the lease, MCO defaulted on its rent payment. Cummings then gave written notice to MCO in accordance with paragraph E of the lease, warning that failure to pay the rent due within ten days "shall result in the automatic termination of the lease without further notice," eviction, and liquidated damages owed to Cummings in the amount of $74,076.24. After MCO failed to timely cure the default, Cummings promptly filed a summary process action against MCO in the Woburn Division of the District Court Department. In its complaint Cummings sought possession of the premises and damages of $74,076.24, representing rent owed for July and August 2016 plus the "[n]et present value of future rent owed pursuant to commercial lease."

 In August 2016 Cummings and MCO resolved the summary process action through an agreement for judgment, which provided that judgment would enter for Cummings on both possession and damages, that MCO would waive all rights of appeal, and that an execution would issue immediately. Hines was the signatory on the agreement for MCO, which was not then represented by counsel. Judgment entered in the District Court in accordance with the agreement, awarding Cummings possession and $74,076.24 in damages. [Note 1]

 Page 31 

 Sometime in the spring of 2017, about one year into the original five-year lease term, Cummings signed a four-year lease with a new tenant and relet the premises. [Note 2] Nonetheless, in January 2020, Cummings initiated this action against Hines as guarantor of the original lease, seeking to recover all of the rent due under the remainder of the five-year term. [Note 3] After the jury-waived trial, the judge issued a thoughtful written decision, in which he first concluded that Hines was "sufficiently sophisticated" to be held to the terms of the lease, including the rent acceleration clause. Then, construing the acceleration clause as "requir[ing] damages equivalent to the amount owed during the full term of the contract," the judge concluded that it was an enforceable liquidated damages provision because the stipulated sum was a reasonable estimate of Cummings's anticipated damages. Judgment then entered for Cummings in the amount of $82,143.01, comprising damages, prejudgment interest, and costs.

 Discussion. On appeal from a judgment after a jury-waived trial, we accept the judge's findings of fact unless clearly erroneous but review de novo the judge's conclusions of law. See T.W. Nickerson, Inc. v. Fleet Nat'l Bank, 456 Mass. 562, 569 (2010). Whether a rent acceleration clause is an enforceable liquidated damages provision or an unenforceable penalty is a question of law. See NPS, LLC v. Minihane, 451 Mass. 417, 419 (2008). We therefore consider it de novo. [Note 4]

 "A rent acceleration clause, in which a defaulting lessee is 

 Page 32 

required to pay the lessor the entire amount of the remaining rent due under the lease, may constitute an enforceable liquidated damages provision so long as it is not a penalty." Cummings Props., LLC v. National Communications Corp., 449 Mass. 490, 494 (2007) (National Communications). See TAL Fin. Corp. v. CSC Consulting, Inc., 446 Mass. 422, 431 (2006) ("It has long been the rule in Massachusetts that a contract provision that clearly and reasonably establishes liquidated damages should be enforced, so long as it is not so disproportionate to anticipated damages as to constitute a penalty"). The burden was on Hines, as the party seeking to set aside the acceleration clause, to prove its unenforceability. See National Communications, supra at 494-495. Barring this, Hines is liable for the remaining rent owed by MCO because his obligations as guarantor are coextensive with those of MCO under the lease. See 275 Washington St. Corp. v. Hudson River Int'l, LLC, 465 Mass. 16, 30 (2013) ("the liability of the guarantor cannot exceed the liability of the debtor").

 Although "[t]here is no bright line separating an agreement to pay a reasonable measure of damages from an unenforceable penalty clause," a liquidated damages provision will generally be enforced if (1) "at the time the agreement was made, potential damages were difficult to determine," and (2) "the clause was a reasonable forecast of damages expected to occur in the event of a breach." TAL Fin. Corp., 446 Mass. at 431-432. Only the second of these conditions is at issue in this case. [Note 5] In determining whether it has been met, we must "examine only the circumstances at contract formation" (the "single look" approach) and not the circumstances at the time of breach (the "second look" approach). Kelly v. Marx, 428 Mass. 877, 880-881 (1999). 

 Page 33 

Liquidated damages that are "'grossly disproportionate to a reasonable estimate of actual damages' made at the time of contract formation" are invalid on grounds of public policy. Id. at 880, quoting Lynch v. Andrew, 20 Mass. App. Ct. 623, 628 (1985). Even where the stipulated sum is "designated in the contract as liquidated damages," "[i]f from the nature of the transaction and the attending circumstances it appears that the contract is a cloak to hide a sum of money out of proportion to and differing greatly from the actual damages ordinarily arising from a breach, then the sum named . . . is a penalty." A-Z Servicenter, Inc. v. Segall, 334 Mass. 672, 675 (1956). See Restatement (Second) of Contracts § 356(1) (1981) ("A term fixing unreasonably large liquidated damages is unenforceable on grounds of public policy as a penalty").

 The award of liquidated damages here cannot stand under these principles. The acceleration clause permits Cummings to retake possession of the premises, relet it and collect rent from the new tenant, and recover all the remaining rent owed by MCO, without having to account for the rent received from the new tenant during the term of the original lease. A provision such as this bears no reasonable relationship to expected damages and is thus unenforceable as a penalty. See 22 Am. Jur. 2d Damages § 545 (2013) (acceleration clause is penalty "if it allows one party to repossess and resell while still collecting the entire unpaid rental for the rest of the term from the party in default"). In so concluding, we do not engage in an impermissible "second look" at the circumstances at the time of breach. Because the acceleration clause allows Cummings to repossess and relet the premises, then at the time of contract formation a reasonable estimate of expected damages would have included either some accounting to MCO for any rent received from a new tenant or some discounting of the stipulated damages to reflect the likelihood of reletting. See Ultra Group of Cos. v. S&A 1488 Mgt., Inc., 357 Ga. App. 757, 760 (2020) (liquidated damages provision "was not a reasonable pre-estimate of the probable loss resulting from a breach" where it did not take into account possibility of rerenting). Cf. TAL Fin. Corp., 446 Mass. at 432 ("Failing to provide any recognition for the type, or timing, of the default . . . tends to indicate that the provision's intended purpose was not to estimate the different types of damages that might arise from a future default, but to penalize for any failure . . . ."). Instead, the acceleration clause requires MCO to pay the full five years of rent owed 

 Page 34 

under the lease regardless of when in the lease period the default occurs and regardless of whether or when Cummings finds a new tenant. While the Supreme Judicial Court has "cautioned . . . against use of the 'second look approach,' the disparity between the stipulated sum . . . and actual damages . . . cannot be ignored in this case, because that disparity was known at the time of the agreement." Id. at 432-433.

 Our conclusion is consistent with the unanimous view of other courts. The function of a rent acceleration clause is to require the tenant "to pay . . . what it agreed to pay up front for the entire term of the lease." National Communications, 449 Mass. at 497 n.9. Thus, upon payment of the accelerated rent, the tenant would be entitled to retain possession of the property. See Fifty States Mgt. Corp. v. Pioneer Auto Parks, Inc., 46 N.Y.2d 573, 578 (1979) (acceleration clause "is merely a device in the landlord-tenant relationship intended to secure the tenant's obligation to perform a material element of the bargain and its enforcement works no forfeiture" so long as "the sum reserved for liquidated damages is no greater than the amount the tenant would have paid had it fully performed and . . . the tenant would be entitled to possession upon payment"); Peirce v. Hoffstot, 211 Pa. Super. 380, 384 (1967) ("The tenant . . . does not forfeit all of his rights when the landlord accelerates, but must thereafter be accorded his possessory rights on payment of the accelerated rent"). It follows then, and "the authorities agree," that if the landlord regains possession and relets the property, "the landlord may not keep both the accelerated rent and rent received from renting to a new tenant." Restatement (Second) of Property (Landlord & Tenant) § 12.1 Reporter's note 10 (1977). [Note 6] Cummings cites no case holding to the contrary, nor have we found one.

 Page 35 

 We disagree with Cummings's suggestion that National Communications is binding on the issue before us and requires that we uphold the judgment. While the facts of National Communications are similar, the court did not address in that case whether a rent acceleration clause is a penalty if it allows the landlord to collect both the full amount of rent owed under the lease and rent from a new tenant. Rather, the issue was whether "in the case of a commercial agreement between sophisticated parties containing a liquidated damages provision applicable to breaches of multiple covenants, it may be presumed that the parties intended the provision to apply only to those material breaches for which it may properly be enforced." National Communications, 449 Mass. at 495-496. As the court specifically noted, the tenant there had made no attempt to show that the stipulated amount was disproportionate to a reasonable estimate of expected damages, offering instead "only an assertion . . . that the liquidated damages provision was an unenforceable penalty as a matter of law." Id. at 497.

 We also disagree with Cummings's suggestion that it need not account for rent received from reletting because the rule in Massachusetts is that "in the case of an enforceable liquidated damages provision, mitigation is irrelevant and should not be considered in assessing damages." NPS, LLC, 451 Mass. at 423. In Panagakos v. Collins, 80 Mass. App. Ct. 697, 703 (2011), we applied this rule in a landlord-tenant matter, stating that "[t]he combined force of [National Communications and NPS, LLC,] constrains us to conclude that the trial judge erred when he considered [the landlord's] failure to mitigate in his assessment of damages from [the tenant's] acknowledged breach of the lease." 

 Page 36 

The upshot of the rule is that, if a lease contains an enforceable liquidated damages provision and the tenant defaults, the landlord can stand by and do nothing to relet the premises or otherwise mitigate damages, and the landlord still would be entitled to collect all of the rent owed by the tenant for the remainder of the lease term. See NPS, LLC, supra at 422 n.7 (noting that plaintiff had not resold defendant's luxury seat "some four years after the defendant committed a breach of the agreement"); Panagakos, supra at 701 (noting that landlord "did not lease [property] to any other tenant"). While one might question the fairness of that result, it is dictated by our case law. [Note 7] But the cases cited by Cummings do not address the situation where, as here, the landlord does relet the property and then seeks to recover the remaining rent from the original tenant as liquidated damages. The issue in this situation is not whether the landlord had a duty to mitigate, but whether the landlord is entitled to recover the liquidated damages while also collecting rent from the new tenant.

 Finally, we are unpersuaded by Cummings's argument that public policy considerations -- namely, "the real-world difficulties inherent in a post-hoc 'accounting' requirement" -- warrant a different result. "Commercial leases are commonly drafted by the landlord, or its attorney, and may specify the remedy provided for a landlord's posttermination loss." 275 Washington St. Corp., 465 Mass. at 26. The cases provide numerous examples of acceleration clauses that require offsets for rents received by the landlord from reletting to a new tenant. See, e.g., Panagakos, 80 Mass. App. Ct. at 700 n.9. Cf. 275 Washington St. Corp., supra ("If the landlord wants the indemnified amount to become due once the property is relet, it may insist that the lease so provide, and identify the means to calculate the amount of indemnified loss"). Whatever practical difficulties might arise in calculating such offsets, they are outweighed by the strong public policy against 

 Page 37 

terms fixing liquidated damages that are out of proportion to any reasonable approximation of anticipated harm. See TAL Fin. Corp., 446 Mass. at 432-433; Kelly, 428 Mass. at 882 & n.6; A-Z Servicenter, Inc., 334 Mass. at 675.

 Conclusion. Although Cummings is not entitled to liquidated damages, it is entitled to its actual damages, as Hines conceded at oral argument. See A-Z Servicenter, Inc., 334 Mass. at 675 (where "the stipulated sum is unreasonably and grossly disproportionate to the real damages from a breach, or is unconscionably excessive, the court will award the aggrieved party no more than his actual damages"). The judgment in favor of Cummings in the amount of $82,143.01 is therefore vacated, and the matter is remanded for further proceedings consistent with this opinion.

So ordered.

FOOTNOTES
[Note 1] MCO later retained an attorney, who moved to vacate the District Court judgment and to recall the execution on the ground that MCO had been unrepresented by counsel. That motion was unsuccessful, for reasons not apparent on this record. But see Varney Enters., Inc. v. WMF, Inc., 402 Mass. 79, 82 (1988) (with exception of small claims proceedings, "corporations must appear and be represented in court, if at all, by attorneys"). In any event, at trial in this case, Cummings disavowed any reliance on the District Court judgment, stating that it was pursuing only its rights under the lease and the guaranty. 

[Note 2] The record does not reveal the amount of rent paid by the new tenant. This is not material to our decision. 

[Note 3] As of October 6, 2016, the unpaid balance of the District Court judgment was $68,650.24. MCO made no further payments after that date. 

[Note 4] While the parties appear to agree that the acceleration clause is only enforceable against Hines if he meets some baseline level of "sophistication," they disagree on whether that question is one of fact or law. Also, neither party has supplied a test for determining sophistication, and we have found no guidance on that issue in Massachusetts case law. See, e.g, Cummings Props., LLC v. National Communications Corp., 449 Mass. 490, 495 (2007) (National Communications) (noting "near unanimous trend toward upholding liquidated damages clauses in agreements between sophisticated parties," but not elaborating on what it means to be "sophisticated"). As the facts here demonstrate, an "I know it when I see it" approach, suggested by Cummings at oral argument, would be neither principled nor workable. On the one hand, as the judge found and Hines does not contest, Hines was at least sophisticated enough "to understand the concepts and consequences of a commercial lease." But on the other hand, the judge found that Hines was not "highly" sophisticated, had no prior experience negotiating commercial leases, was not represented by counsel during the negotiations, and did not actually understand all of the lease terms, including the acceleration clause. Ultimately, although we agree with Hines that there was an obvious disparity in bargaining power, we need not reach the question of sophistication because we conclude that the acceleration clause is unenforceable on other grounds. 

[Note 5] In National Communications, 449 Mass. at 496, the court, considering a similar rent acceleration clause in another of Cummings's commercial leases, concluded that the first condition was met because "the parties could not have foreseen when in the lease term a breach for nonpayment of rent would occur, what the commercial rental market would be at that time, or what the cost of finding another tenant and the length of time the property might remain vacant might be." Hines does not contend that the facts here warrant a different conclusion. 

[Note 6] See Quintero-Chadid Corp. v. Gersten, 582 So. 2d 685, 688-689 (Fla. Dist. Ct. App. 1991) (upon exercising acceleration clause, landlord "cannot collect the full amount due and then relet to a third person" but "must give the tenant credit for the rents received" from reletting); Ultra Group of Cos., 357 Ga. App. at 760 ("We have rejected liquidated damages clauses where the lessor received all future revenue and full possession of the property with the ability to re-rent or sell, because the liquidated damages placed the lessor in a far better position than it would have been if the contract had never been breached" [quotation and citation omitted]); Aurora Business Park Assocs., L.P. v. Michael Albert, Inc., 548 N.W.2d 153, 157 (Iowa 1996) (en banc) (acceleration clause that entitled landlord "to damages equal to the amount of rent reserved in the lease, plus any other consequential damages," was enforceable because it also required crediting of any "amounts received in reletting the property"); Frank Nero Auto Lease, Inc. v. Townsend, 64 Ohio App. 2d 65, 68-69 (1979) (acceleration clause that "permit[ted] the lessor to regain possession of the leased motor vehicle, relet or resell the motor vehicle and collect rents for the entire period of the lease" was unenforceable because it "enable[d] the lessor to receive a double payment for the leased motor vehicle and [bore] no reasonable relationship to damages actually sustained"); Ferrick v. Bianchini, 69 A.3d 642, 656 (Pa. Super. Ct. 2013) (if "commercial tenant vacates the leasehold, the landlord may seek accelerated rent if the lease so provides, and re-let the premises" but "must credit tenant at execution for sums paid by the replacement tenant"). Cf. 172 Van Duzer Realty Corp. v. Globe Alumni Student Assistance Ass'n, 24 N.Y.3d 528, 536 (2014) (holding that, although landlord's damages were reduced by amount of rent received from new tenant, acceleration clause was still arguably a penalty where it allowed landlord to "enjoy uninterrupted possession of the property" while collecting all rent due from former tenant "in one lump sum, undiscounted to present-day value," and remanding for taking of further evidence). 

[Note 7] We note some tension in the landlord-tenant context between (a) a rule that requires no mitigation and (b) the principle that "[t]ermination of a lease ends a tenant's obligation to pay rent in the absence of any provision otherwise[ and, 'i]f there is such a provision, the landlord is required to take reasonable steps to obtain a new tenant on terms that will mitigate the original tenant's liability as much as is feasible under the circumstances.'" Krasne v. Tedeschi & Grasso, 436 Mass. 103, 109 (2002), quoting Restatement (Second) of Property (Landlord and Tenant) § 12.1 comment i (1977). See National Communications, 449 Mass. at 497 (declining to address tenant's argument about mitigation because not pleaded as affirmative defense). But we view Panagakos to be binding on this issue. 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.