NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-13406

CUMMINGS PROPERTIES, LLC  vs.  DARRYL C. HINES.


Middlesex.     May 3, 2023. - September 25, 2023.

Present:  Budd, C.J., Gaziano, Lowy, Cypher, Kafker, Wendlandt,
& Georges, JJ.


Real Property, Lease.  Contract, Lease of real estate, Rent
     acceleration clause, Provision for liquidated damages.
     Damages, Liquidated damages, Mitigation.  Guaranty.
     Penalty.



     Civil action commenced in the Superior Court Department on
January 6, 2020.

     The case was heard by Christopher K. Barry-Smith, J.

     After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.


     Joseph B. Simons for the defendant.
     Joseph P. Mingolla for the plaintiff.
     The following submitted briefs for amici curiae:
     John Pagliaro & Daniel B. Winslow for New England Legal
Foundation.
     Charles L. Solomont & Andrew M. Buttaro for NPS LLC.
     Thomas Bhisitkul & Michael Riley for Real Estate Bar
Association for Massachusetts, Inc., & another.

BUDD, C.J.  For over a century, Massachusetts courts have recognized and enforced liquidated damages clauses.[1]  Although it is true that these clauses potentially can result in an unwarranted penalty for a party committing a breach and a windfall for the party not committing a breach, it long has been the rule that "parties are to be held to their words . . . except in exceptional cases."  Garst v. Harris, 177 Mass. 72, 74 (1900).  As discussed infra, we recognize that liquidated damages clauses do not always match the actual damages resulting from a contract breach.  However, we are careful to distinguish between clauses that are true penalties and those that, although imprecise, were reasonable predictions of damages at the time the contract was entered into by willing parties.  In this case, we ultimately find the latter.

The defendant, Darryl C. Hines, contends that the liquidated damages clause in a commercial lease is unenforceable where the landlord, Cummings Properties, LLC (Cummings), was able to relet the property after Hines's company defaulted on the rent.  Because we conclude that Hines failed to meet his burden in proving that the amount provided for in the clause was

---

[1] If there occurs a breach of a contract, a liquidated damages clause entitles the party not committing the breach to collect from the party committing the breach an amount corresponding to what the parties predicted the breach would cost the party that did not commit the breach.  See generally 24 R.A. Lord, Williston on Contracts § 65.1 (4th ed. 2018).

an unreasonable forecast of damages at the time the lease was signed, we affirm the judgment of the Superior Court in favor of Cummings.[2]

Background and procedural posture. We recite the undisputed facts as found by the trial judge,[3] supplementing them where necessary with undisputed evidence in the record and leaving some details for later discussion. See Miramar Park Ass'n v. Dennis, 480 Mass. 366, 369 (2018).

On April 15, 2016, Cummings entered into a five-year lease with Massachusetts Constable's Office, Inc. (MCO), a service of process company, of which Hines was founder, sole officer, and director. Hines signed as guarantor, "personally and unconditionally guarantee[ing] the prompt payment of rent by [MCO] and the performance by [MCO] of all financial and nonfinancial obligations arising out of [the] lease."

The lease provided that in the event that MCO failed to pay the rent due ($1,364.50 per month), after a ten-day grace period and notice to MCO, Cummings would have the right to terminate the lease and the "entire balance of rent due . . . immediately

---

[2] We acknowledge the amicus briefs submitted by New England Legal Foundation; the Real Estate Bar Association for Massachusetts, Inc., and the Abstract Club; and NPS LLC.

[3] We accept the trial judge's findings of fact unless they clearly are erroneous. See Anastos v. Sable, 443 Mass. 146, 149 (2004).

[would] become due and payable as liquidated damages, since both parties agree that such amount is a reasonable estimate of the actual damages likely to result from such breach."

Less than one month after the lease agreement took effect, MCO lost a lucrative contract it had secured with the Department of Revenue (DOR). The next month, MCO failed to pay its rent. Cummings sent a notice of default and, after ten days, commenced summary process proceedings in the District Court. One year after MCO had vacated the premises, Cummings secured a four-year lease with a new tenant.

Cummings later filed a complaint in the Superior Court seeking to enforce Hines's obligations as guarantor of the lease. After a bench trial, the trial judge concluded that the liquidated damages provision was enforceable. The judge further found that Hines was "sufficiently sophisticated" to have understood that by signing as personal guarantor, he would be liable if MCO failed to meet its obligations. Consequently, the judge found in favor of Cummings, awarding it $68,650.24, the balance owed under the liquidated damages clause after subtracting any payments already made by MCO. The Appeals Court reversed, concluding that because the liquidated damages provision did not account for the possibility that Cummings could relet the premises and collect rent from a new tenant in mitigation of the breach, it was an unenforceable penalty.

Cummings Props., LLC v. Hines, 102 Mass. App. Ct. 28, 33-34, 37 (2022). We granted Cummings's application for further appellate review.

Discussion. Hines argues that in these circumstances the clause operates as an impermissible penalty. He also contends that he was an unsophisticated party who should not be required to fulfill his end of the original agreement. As explained infra, we are not persuaded by either argument.

1. Enforceability of liquidated damages clauses. "[T]he general rule of our law is freedom of contract . . . [and] it is in the public interest to accord individuals broad powers to order their affairs through legally enforceable agreements" (quotations and citations omitted). Beacon Hill Civic Ass'n v. Ristorante Toscano, Inc., 422 Mass. 318, 320 (1996). This is so even where, as here, the enforcement of the contract appears to produce harsh results. See, e.g., NPS, LLC v. Minihane, 451 Mass. 417, 422 (2008).

So it is with liquidated damages clauses. "It has long been the rule in Massachusetts that a contract provision that clearly and reasonably establishes liquidated damages should be enforced, so long as it is not so disproportionate to anticipated damages as to constitute a penalty." TAL Fin. Corp. v. CSC Consulting, Inc., 446 Mass 422, 431 (2006), citing Kaplan v. Gray, 215 Mass. 269, 270-273 (1913).

Generally, jurisdictions test the enforceability of a liquidated damages clause in one of two ways:  by analyzing the circumstances at the time the contract was formed, known as the "single look" approach, or by considering the circumstances at the time of the breach, i.e., the "second look" approach.  See Kelly v. Marx, 428 Mass. 877, 879 (1999).  This court has adopted the single look approach.  Id. at 880.

We recognize that the second look approach allows for an after-the-fact adjustment to avoid a windfall for the party not committing the breach "by assessing the reasonableness . . . against the actual damages resulting from the breach."  Id. at 879.  However, as we explained when we opted to follow the single-look approach, of the two, it "most accurately matches the expectations of the parties, who negotiated a liquidated damage amount that was fair to each side based on their unique concerns and circumstances surrounding the agreement, and their individual estimate of damages in event of a breach."  Id. at 880.  By assigning a specific value to a contract breach ahead of time, a liquidated damages clause has the potential to promote certainty, resolve disputes efficiently, and, notwithstanding the instant case, avoid litigation.  See Cummings Props., LLC v. National Communications Corp., 449 Mass. 490, 496 (2007) (Cummings Props.).  See also 24 R.A. Lord, Williston on Contracts § 65.17 (4th ed. 2018) ("The more popular

view is that the reasonableness of a liquidated damages clause should be determined as of the time the contract was executed, not with the benefit of hindsight").

In contrast, the second look approach encourages an aggrieved party to bring suit and attempt to show evidence of damage due to a contract breach. That is, under the second-look approach, "the 'parties must fully litigate (at great expense and delay) that which they sought not to litigate.'"[4] Kelly, 428 Mass. at 881, citing Watson v. Ingram, 124 Wash. 2d 845, 851-852 (1994). See Note, "Keep the Change!": A Critique of the No Actual Injury Defense to Liquidated Damages, 65 Wash. L. Rev. 977, 991 (1990). For this reason, we have "squarely rejected the 'second look' approach." TAL Fin. Corp., 446 Mass. at 431.

2. Application of the single look approach. Under the single look approach, a liquidated damages clause will be enforced if (1) the actual damages resulting from a breach were difficult to ascertain at the time the contract was signed; and (2) the sum agreed on as liquidated damages represents a "reasonable forecast of damages expected to occur in the event

---

[4] Indeed, as Justice Spina aptly pointed out when he sat on the Appeals Court, the "'second look' reveals nothing that the parties had not contemplated" when they entered their contract. Kelly, 428 Mass. at 880-881, quoting Kelly v. Marx, 44 Mass. App. Ct. 825, 833 (1998) (Spina, J., dissenting).

of a breach." NPS, LLC, 451 Mass. at 420, quoting Cummings Props., 449 Mass. at 494.

As the party seeking to invalidate the liquidated damages provision, Hines had the burden to prove either that (1) damages resulting from a contract breach were easily ascertainable at the time the contract was signed, or (2) the "damages to which [MCO] agreed are disproportionate to a reasonable estimate of those actual damages likely to result from a breach." Cummings Props., 449 Mass. at 494-495. Hines failed to prove either.

With regard to the first prong, although Hines asserted that Cummings, a high-volume commercial landlord, was likely to relet the premises on default and that any damages resulting from the default thus would not have been difficult to ascertain, he failed to present evidence to support these claims.[5] In the absence of such evidence, the trial judge concluded that there was no way to predict when a breach might occur, whether or when a new tenant would be secured, what the new rent might be, and what costs Cummings would incur in the meantime, and that damages therefore were indeed difficult to ascertain. See Cummings Props., 449 Mass. at 496; Kelly, 428

---

[5] In contrast, Cummings called an employee to the stand who testified that due to market forces and other factors, the company had no reliable method for predicting how long it would take to relet a vacant office space. The employee further testified that multiple units in the same office building where MCO had rented space had been empty for as long as twelve years.

Mass. at 881-882. Cf. 275 Washington St. Corp. v. Hudson River Int'l, LLC, 465 Mass. 16, 25-26 (2013).

As for the second prong, we previously have held that where, as here, the liquidated damages amount provided for in the lease represents the agreed-on rental value of the property at the time of the breach and decreases during the term of the lease, it is a "reasonable anticipation of damages that might accrue from the nonpayment of rent." NPS, LLC, 451 Mass. at 422, quoting Cummings Props., 449 Mass. at 496-497. Correspondingly, where the tenant "is required to pay no more than the total amount [it] would have paid had [the tenant] performed [its] obligations under the agreement[, t]he sum provided for . . . bears a reasonable relationship to the anticipated actual damages resulting from a breach." NPS, LLC, supra. See Panagakos v. Collins, 80 Mass. App. Ct. 697, 702-703 (2011).

Contrary to the holding of the Appeals Court, we never have required that the amount of a liquidated damages clause take into account any future rents collected from a new tenant to be enforceable.[6]

---

[6] Relying on TAL Fin. Corp., 446 Mass. 422 (TAL), the Appeals Court concluded that the liquidated damages clause was an unenforceable penalty because it did not account for rent that Cummings collected from the new tenant during the original lease term. Cummings Props., LLC, 102 Mass. App. Ct. at 33-34.

Even though Hines failed to meet his burden to demonstrate that the liquidated damages provision amounted to a penalty, he nevertheless contends that the sum should be decreased by the amount Cummings collected by reletting the space.  This position does not comport with our case law.  As discussed supra, in our view, the single look approach aligns with the purpose of a liquidated damages clause, i.e., to provide certainty for parties at the time the contract is formed.

> "When parties agree in advance to a sum certain that represents a reasonable estimate of potential damages, they exchange the opportunity to determine actual damages after a breach, including possible mitigation, for the peace of mind and certainty of result afforded by a liquidated damages clause.  In such circumstances, to consider whether a plaintiff has mitigated its damages not only is illogical, but also defeats the purpose of liquidated damages provisions."  (Quotation and citations omitted.)

NPS, LLC, 451 Mass. at 423.  As we already have determined that the liquidated damages clause does not amount to a penalty, it is enforceable according to the terms of the contract regardless of when, if ever, Cummings was able to relet the premises.

---

However, in TAL we determined that the amount set by the liquidated damages clause "b[ore] no rational relation to the parties' expectation of the true value of the leased items" at the time the contract was signed.  TAL, 446 Mass. at 433.  The clause also provided a separate source of damages in addition to the lessor's "independent ability to collect all future monthly payments [from the lessee] still due under the lease."  Id. at 432-433.  In contrast, here, as discussed supra, the amount set by the liquidated damages clause was a reasonable estimate of damages that could occur from a breach at the time the contract was formed.

Hines has not persuaded us to abandon our method of applying the single look approach.[7]  We remain convinced that where a contract is unambiguous and freely entered into, it is preferable for parties to bargain with one another as they see fit, rather than to have courts step in to decide whether and how to restructure a contract because certain contingencies were not accounted for by one of the parties.  See NPS, LLC, 451 Mass. at 420 ("we look to the circumstances at the time of contract formation; we do not take a 'second look'").  Cf. Le

---

[7] Many jurisdictions similarly have determined that under the single look approach, actual damages are not material in evaluating the enforceability of a liquidated damages clause. See, e.g., Old Colony Constr., LLC v. Southington, 316 Conn. 202, 222 (2015); Proulx v. 1400 Pa. Ave., SE, LLC, 199 A.3d 667, 673-674 (D.C. 2019).  This is so even where enforcing the clause resulted in the party that did not commit the breach receiving more than it would have under the original contract.  See, e.g., Guiliano v. Cleo, Inc., 995 S.W.2d 88, 100-101 (Tenn. 1999); Stein Eriksen Lodge Owners Ass'n v. MX Techs. Inc., 2022 UT App 30, ¶¶ 57-59.

Conversely, some jurisdictions, despite espousing single look principles, have adopted exceptions to the analysis that alter it significantly.  See, e.g., General Elec. Capital Corp. v. Nucor Drilling, Inc., 551 F. Supp. 2d. 1375, 1381 (M.D. Ga. 2008) (mitigation required under Georgia law to enforce liquidated damages clause); Fortune Bridge Co. v. Department of Transp., 242 Ga. 531, 532 (1978) (liquidated damages clauses presumed unenforceable in close cases); 172 Van Duzer Realty Corp. v. Globe Alumni Student Assistance Ass'n, 24 N.Y.3d 528, 536-537 (2014) (remanding judgment enforcing liquidated damages clause for consideration of actual damages); Frank Nero Auto Lease, Inc. v. Townsend, 64 Ohio App. 2d 65, 71 (1979) (mitigation required to enforce liquidated damages clause).

Fort Enters., Inc. v. Lantern 18, LLC, 491 Mass. 144, 153-154 (2023).

3. Sophistication. "A contractual liquidated damages provision is entitled to a presumption of validity, especially where . . . it was negotiated between two sophisticated parties." Nantasket Beachfront Condominiums, LLC v. Hull Redev. Auth., 87 Mass. App. Ct. 455, 469 (2015). See Cummings Props., 449 Mass. at 495-496. Hines claims that he was not a sophisticated party, thus, the liquidated damages clause is not enforceable against him. This argument fails.

As an initial matter, Hines's contention that one's level of sophistication in business matters is a question of law rather than fact is incorrect.[8] See Drakopoulos v. U.S. Bank Nat'l Ass'n, 465 Mass. 775, 788 (2013), citing O'Connor v. Redstone, 452 Mass. 537, 550 (2008) (judge's determinations that plaintiffs were "reasonably sophisticated" and "knew what they were doing" were based on "weigh[ing of] the evidence" and "credibility assessments" properly left to trier of fact). See also Miller, Contract Law, Party Sophistication and the New Formalism, 75 Mo. L. Rev. 493, 497 n.21, 520 (2010) (collecting cases from other jurisdictions addressing sophistication as

_____

[8] Hines's position also is contradicted by the basis for his argument that he lacked the requisite sophistication, which is entirely grounded in his view of the facts.

question of fact).  Cf. Sparrow v. Demonico, 461 Mass. 322, 327-328 (2012) (determining competency to contract is question of fact).

At trial, Hines alleged that his previous lease for office space was an informal arrangement and that he did not have experience negotiating a lease with a large commercial landlord. He also pointed to the fact that he was not represented by an attorney, and that he did not read the lease carefully before signing it on behalf of MCO and as personal guarantor.  However, there was also undisputed evidence that Hines started at least two businesses and, at some point, converted MCO from a for-profit to a not-for-profit company, all of which required the filing of the appropriate corporate forms.  In addition to MCO, where he held a number of officer positions simultaneously and had up to ten employees, Hines also ran a company that provided tax preparation services.  Further, MCO's move to Woburn was the result of Hines having negotiated a contract for MCO to provide services to the DOR.

Based on these facts, the judge reasoned that Hines "demonstrate[d] some facility for business management and planning," and that the process of entering into a government contract with the DOR likely required the "same skills [that] are relevant to negotiating commercial leases."  The judge thus determined that although Hines was not a "highly sophisticated

business person," he was "<u>sufficiently</u> sophisticated to be held to the provisions of the contract he signed" (emphasis in the original).[9]  See <u>H1 Lincoln, Inc.</u> v. <u>South Washington St., LLC</u>, 489 Mass. 1, 13 (2022), citing <u>Commissioner of Revenue</u> v. <u>Comcast Corp.</u>, 453 Mass. 293, 302 (2009) (judge's findings of fact reviewed for clear error).

<u>Conclusion</u>.  As Hines has failed to meet his burden to show that the liquidated damages clause is unenforceable, we affirm the judgment of the Superior Court.

<u>Judgment affirmed</u>.

---

[9] Although Hines argues that his ventures were more informal than they otherwise might appear, we cannot say that the judge committed clear error in relying on them.  Moreover, Hines's claim that he did not read the lease agreement does not alter our analysis.  See <u>Miller</u> v. <u>Cotter</u>, 448 Mass. 671, 680 (2007) ("failure to read the agreement 'word-for-word' makes no difference"); <u>Yorke</u> v. <u>Taylor</u>, 332 Mass. 368, 372 (1955) (generally, "the court should exhibit no greater interest in protecting a plaintiff's rights than he himself has shown").  Similarly, that Hines is not an attorney, and was not represented by one, does not mean that he is unsophisticated for the purposes of enforcing the terms of the lease.  Cf. <u>NPS, LLC</u>, 451 Mass. at 420 (sophistication, like reasonableness, "depends on the circumstances of each case").