STANDARD PAPER AND MERCHANDISE COMPANY, INCORPORATED, *vs.* CITY OF SPRINGFIELD.

Hampden.     October 9, 1969. — December 4, 1969.

Present: WILKINS, C.J., CUTTER, KIRK, SPIEGEL, & REARDON, JJ.

*Negligence,* Water meter. *Municipal Corporations,* Waterworks. *Witness,* Expert witness. *Evidence,* Opinion: expert; Judicial discretion.

Evidence warranted a finding of negligence of the water department of a city toward the owner of merchandise with respect to a thirty-nine year old, cast iron water meter which burst and brought about flooding of the merchandise. [476–477]

The qualification of a witness as an expert rests in the discretion of the trial judge. [477]

No error appeared at a trial in the allowance of a lengthy hypothetical question which, although not as aptly phrased as it might have been, was based on the evidence. [477]

TORT.  Writ in the Superior Court dated July 11, 1962.

The action was tried before *Brogna,* J.

*James L. Allen* for the defendant.

*Edward J. Barry* for the plaintiff.

REARDON, J.  The plaintiff brought suit for damages allegedly caused by flooding of its personal property stored in the cellar of a building which it rented.  There was a verdict for the plaintiff and the case is here on the defendant's exceptions to the denial of its motion for a di-

rected verdict and to the overruling of its objection to a hypothetical question addressed by the plaintiff to an expert.

The pertinent facts can be simply stated. The plaintiff's general manager arriving to open the building on July 24, 1961, found the basement, in which a large quantity of merchandise was stored, flooded with water. To pump this water from the cellar consumed a day and a half, during which it became apparent that the flooding had been caused by a broken meter. This meter had been taken from the premises by the city water department on October 15, 1956, and stored at the water department repair shop where it was given an "accuracy test." It had first been installed in the plaintiff's premises in 1922 and had been subjected to periodic tests in the years since. Ordinarily such tests would occur each seven years but in recent years the water department "had fallen behind in its tests." On March 6, 1961, it was reinstalled in the plaintiff's premises. The meter was thirty-nine years old when it burst. There are occasional surges in pressure on water lines and an expert testified that such a surge on an old meter which had undergone corrosion would cause the fracture of the meter. The expert further testified that a cast iron meter, as this one was, is reduced in thickness over the years and is, hence, more likely to experience a failure. He also stated that this deterioration would have been apparent on a "visual observation of the interior of the meter."

1. It is our view that the court did not err in denying the defendant's motion for a directed verdict. We agree with the plaintiff that there was evidence before the court sufficient to warrant the judge's action. The defendant, which was completely in control of the reinstallation of the meter, owed the duty to the plaintiff of reinstalling it in "a workmanlike manner, with reasonable judgment, skill and care, according to the approved usages of . . . [the] trade." *Kelley* v. *Laraway*, 223 Mass. 182, 184. *Friese* v. *Boston Consol. Gas Co.* 324 Mass. 625, 628–629. The consequences of the installation of a defective meter play a role

in the determination of what constitutes reasonable skill and judgment in the circumstances. *Friese* v. *Boston Consol. Gas Co., supra,* at p. 629.

There was testimony to indicate the meter had "burst." The expert testified to the rate of corrosion which might be expected in a cast iron meter and said that his personal observation of the meter indicated that the corrosion produced the bursting of the meter "because of water pressure inside the meter caused by a moderate water hammer." There was also evidence that the city water department had not subjected the meter to a pressure test at its premises after the removal of the meter in 1956 nor had there occurred any separate test of water pressure at the plaintiff's premises which might indicate whether a thirty-nine year old meter could successfully withstand the pressure. The evidence further did not demonstrate that prior to its reinstallation at the plaintiff's premises the head of the meter had been taken off to afford an opportunity for visual inspection which would have disclosed the weakness of the meter. All of the foregoing, in addition to certain evidence concerning record keeping practices of the city water department, serves to emphasize that there was enough to take this case to the jury. *Weiner* v. *D. A. Schulte, Inc.* 275 Mass. 379, 385. *Cheng* v. *Chin Wai Yip,* 339 Mass. 173, 175.

2. We discern no error either in the qualification of the expert or the allowance of the hypothetical question put to him which he answered. His qualification was a matter of discretion for the judge. *Consolini* v. *Commonwealth,* 346 Mass. 501, 503. *DeJesus* v. *Hamel,* 349 Mass. 764. The lengthy question put to the expert, while not couched in terms as aptly phrased as might have been the case, was not in our view sufficiently objectionable to disqualify the expert witness from responding to it. A review of the bill makes it apparent that in one form or another the hypothesis on which the question was based was before the court in evidence from various witnesses.

*Exceptions overruled.*