## NPS, LLC vs. Paul Minihane.

Norfolk. April 7, 2008. - May 15, 2008.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Cordy, & Botsford, JJ.

*Damages,* Liquidated damages, Mitigation. *Practice, Civil,* Findings by judge. *Contract,* Provision for liquidated damages, Performance and breach.

An acceleration clause in a ten-year license agreement (agreement) for luxury seats for professional football games, which required the purchaser of the license (defendant) to pay, upon default, the amounts due for all years remaining on the license, constituted an enforceable liquidated damages provision, where the harm resulting from a possible breach of the agreement was difficult, if not impossible, to ascertain at the time the parties entered into the agreement, and where the defendant failed to sustain his burden of showing that the amount of liquidated damages (which required him to pay no more than the total amount he would have paid had he performed his obligations under the agreement) was unreasonably and grossly disproportionate to the real damages from a breach. [419-422]
Statement that in the case of an enforceable liquidated damages provision in a contract, the issue of mitigation is irrelevant and should not be considered in assessing damages. [423]

CIVIL ACTION commenced in the Superior Court Department on October 29, 2003.

The case was heard by *Charles J. Hely,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Charles L. Solomont (Daniel L. Goldberg & Brandon L. Bigelow* with him) for the plaintiff.

*Timothy F. O'Brien* for the defendant.

COWIN, J. In this case we decide whether an acceleration clause in a ten-year license agreement for luxury seats for New England Patriots professional football games at Gillette Stadium is enforceable. The agreement requires the purchaser of the license to pay, upon default, the amounts due for all years remaining on the license. The plaintiff contends that the clause is a lawful liquidated damages provision; the defendant, who

defaulted in the first year of the agreement, argues that it is an unlawful penalty. A judge in the Superior Court agreed with the defendant and refused to enforce the provision. Because we conclude the provision is enforceable, we modify the judgment accordingly.

*Background.* The judge issued his ruling on the liquidated damages provision from the bench without detailed findings of fact. Most of the underlying facts, however, are not in dispute, as indicated by the joint stipulation of the parties. We supplement these facts with those that were found or implied by the judge. The plaintiff, NPS, LLC (NPS), is the developer of Gillette Stadium (stadium), the home field of the New England Patriots professional football team (Patriots). In 2002, while the stadium was still under construction, NPS entered into an agreement with the defendant, Paul Minihane, for the purchase of a ten-year license for two luxury seats in the Club Level III section.[1] The agreement called for the defendant to pay $3,750 per seat annually for each of the ten seasons from 2002 to 2011. The agreement included a liquidated damages provision, set forth in the margin,[2] which provides that in the event of a default, including failure to pay any amount due under the license agreement,

---

[1]In an addendum to the agreement, the defendant also contracted for a "VIP parking" pass and use of "VIP exit lanes" at the stadium, agreeing to pay $1,000 per year for those privileges during the same ten-year term. The trial judge ruled that NPS could not recover the outstanding parking fees, and NPS does not appeal that ruling.

[2]"15. *Default.* The following shall constitute an 'Event of Default' under this Agreement: (i) Licensee fails to pay when due any amounts to be paid by Licensee pursuant to the Agreement . . . . In the event of any such Event of Default, Owner may, at its option: (a) withhold distribution of tickets to Licensee for games and/or other Stadium Events until such time as such default is cured; and/or (b) terminate the rights of Licensee under the Agreement after giving Licensee not less than twenty (20) days prior written notice of such default or breach . . . . In the event that Licensee shall not have cured the default or breach specified in said notice by the date specified in said notice, Owner may terminate the right of Licensee to the use and possession of the Club Seats and all other rights and privileges of Licensee under the Agreement and declare the entire unpaid balance of the License Fee (which for the purposes hereof shall include the total aggregate unpaid balance of the annual License Fees for the remainder of the Term) immediately due and payable, whereupon Owner shall have no further obligation of any kind to Licensee. Owner shall have no duty to mitigate any damages incurred by it as a result of a default by Licensee hereunder. . . ."

the payments would be accelerated so that the defendant would be required to pay the balance for all the years remaining on the contract.[3] Upon executing the agreement, the defendant paid a $7,500 security deposit; he later made a payment of $2,000 toward the license fee for the 2002 season. Although he or his guests attended all but one of the 2002 preseason and regular season Patriots games at the stadium using the tickets for the Club Seats, he made no further payments.

After giving notice to the defendant, NPS accelerated the payments and filed a complaint in the Superior Court seeking the full amount due under the contract. After a bench trial, the judge ruled that the liquidated damages provision was unenforceable because the amount due was "grossly disproportionate to a reasonable estimate of actual damages made at the time of contract formation." After taking further evidence on the issue of actual damages, the judge issued a memorandum of decision and order in which he awarded damages to NPS in the amount of $6,000.[4] This appeal followed, and we transferred the case to this court on our own motion.

*Discussion.* We accept the judge's findings of fact unless they are clearly erroneous. *Kendall* v. *Selvaggio*, 413 Mass. 619, 620 (1992). "On the other hand, to ensure that the ultimate findings and conclusions are consistent with the law, we scrutinize without deference the legal standard which the judge applied to the facts." *Id.* at 621. Whether a liquidated damages provision in a contract is an unenforceable penalty is a question of law. *Manganaro Drywall, Inc.* v. *Penn-Simon Constr. Co.*, 357 Mass.

---

[3]The defendant is a licensed real estate broker and has experience as a general contractor and real estate developer. At the time of trial, he was the chairman of the Boston Finance Commission. He acknowledged that he has entered into "numerous commercial contracts, including institutional loan agreements," and that it is his practice to advise his real estate clients to read agreements before signing. At trial, however, he conceded that, despite the fact that he had a three-day right of rescission that gave him time to review the contract, he had not read the entire license agreement before signing and was unaware that it included a liquidated damages provision. He does not claim that NPS induced him to sign the agreement by fraud, misrepresentation, or high-pressure sales tactics.

[4]The judge also awarded NPS attorney's fees and costs in the amount of $20,000, concluding that the $132,945 that NPS requested was unreasonable. NPS does not appeal this portion of the judgment.

653, 656 (1970).[5] The burden of showing that a liquidated damages provision is unenforceable rests with the party challenging enforcement of the provision (here, the defendant), *TAL Fin. Corp.* v. *CSC Consulting, Inc.*, 446 Mass. 422, 423 (2006), and we resolve reasonable doubts in favor of the aggrieved party (here, NPS). *Cummings Props., LLC* v. *National Communications Corp.*, 449 Mass. 490, 494 (2007).

It is well settled that "a contract provision that clearly and reasonably establishes liquidated damages should be enforced, so long as it is not so disproportionate to anticipated damages as to constitute a penalty." *TAL Fin. Corp.* v. *CSC Consulting, Inc.*, *supra* at 431. A liquidated damages provision will usually be enforced, provided two criteria are satisfied: first, that at the time of contracting the actual damages flowing from a breach were difficult to ascertain; and second, that the sum agreed on as liquidated damages represents a "reasonable forecast of damages expected to occur in the event of a breach." *Cummings Props., LLC* v. *National Communications Corp.*, *supra* at 494. Where damages are easily ascertainable, and the amount provided for is grossly disproportionate to actual damages or unconscionably excessive, the court will award the aggrieved party no more than its actual damages. *A-Z Servicenter, Inc.* v. *Segall*, 334 Mass. 672, 675 (1956). Since there is "no bright line separating an agreement to pay a reasonable measure of damages from an unenforceable penalty clause," *TAL Fin. Corp.* v. *CSC Consulting, Inc.*, *supra*, the reasonableness of the measure of anticipated damages depends on the circumstances of each case. *A-Z Servicenter, Inc.* v. *Segall*, *supra*. In assessing reasonableness, we look to the circumstances at the time of contract formation; we do not take a "second look" at the actual damages after the contract has been breached. *Kelly* v. *Marx*, 428 Mass. 877, 878 (1999).

In this case, the trial judge found that, at the time the parties

---

[5]See 3 E.A. Farnsworth, Contracts § 12.18 (3d ed. 2004). Nearly all the jurisdictions that have considered the issue follow this rule. See, e.g., *In re Montgomery Ward Holding Corp.* v. *Meridian Leasing Corp.*, 326 F.3d 383, 387 (3d Cir. 2003) (applying Illinois law); *Morris* v. *Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1314 (2005); *Board of Educ.* v. *Heister*, 392 Md. 140, 155 (2006); *JMD Holding Corp.* v. *Congress Fin. Corp.*, 4 N.Y.3d 373, 379 (2005).

entered into the license agreement, the harm resulting from a possible breach was difficult to ascertain. That finding was supported by the evidence, which indicated that the damages sustained by NPS would vary depending on the demand for tickets at the time of breach. Although the Patriots had won their first Super Bowl championship in 2002, shortly before the parties entered into their agreement, the demand for luxury stadium seats was then and remains variable and depends, according to the evidence, on the current performance of the team, as well as other factors, such as the popularity of the players and the relative popularity of other sports, that are unpredictable at the time of contract. Therefore, to predict at the time of contract how long it would take NPS to resell the defendant's seat license would be extremely difficult, if not impossible.

The judge went on to find, however, that the sum provided for in the agreement — acceleration of all payments for the remaining term of the contract — was "grossly disproportionate to a reasonable estimate of actual damages made at the time of contract formation." That finding was not supported by the evidence. It is the defendant's burden to show that the amount of liquidated damages is "unreasonably and grossly disproportionate to the real damages from a breach" or "unconscionably excessive." See *TAL Fin. Corp.* v. *CSC Consulting, Inc.*, *supra* at 423; *A-Z Servicenter, Inc.* v. *Segall*, *supra* at 675. Having presented little evidence beyond his assertion that the contract as a whole was unconscionable, the defendant in this case has not sustained that burden.

The liquidated damages provision here is similar to one we upheld in *Cummings Props., LLC* v. *National Communications Corp.*, *supra* (*Cummings*).[6] In that case, a tenant who defaulted on a commercial lease was required by the terms of the agree-

---

[6] In *Cummings Props., LLC* v. *National Communications Corp.*, 449 Mass. 490, 491 (2007), as in this case, the liquidated damages figure arose by virtue of an acceleration clause, which provided that, in the event of a breach, all future payments would immediately become due and payable. An acceleration clause generates an amount of damages that varies depending on the point in the life of the contract at which breach occurs; that amount is then used as a substitute for the plaintiff's actual damages. We have evaluated acceleration clauses using the same two-part test that we use for evaluating liquidated

ment to pay the entire amount of rent remaining under the lease. *Id.* at 491-492. The judge here did not have the benefit of our decision in *Cummings*, which was issued more than a year after the trial in this case; however, for present purposes, we see no meaningful distinction between the two provisions. In upholding the liquidated damages provision in *Cummings*, we noted that "to the extent that the liquidated damages amount represented the agreed rental value of the property over the remaining life of the lease, decreasing in amount as the lease term came closer to expiration, it appears to be a reasonable anticipation of damages that might accrue from the nonpayment of rent." *Id.* at 496-497. The same is true here. This, like *Cummings*, is a case where the damages were difficult to estimate at the outset, and the defendant is required to pay no more than the total amount he would have paid had he performed his obligations under the agreement. The sum provided for therefore bears a reasonable relationship to the anticipated actual damages resulting from a breach. It anticipates a worst-case scenario, that is, NPS's inability to resell the seat for the remaining term of the license.[7] However, the defendant has not shown that this outcome is sufficiently unlikely that it renders the amount grossly disproportionate to a reasonable estimate of actual damages.

The defendant stood to receive a substantial benefit from this agreement: guaranteed luxury seating for all Patriots home games, as well as a hedge against future price increases over ten years. He was not deprived of an opportunity to learn and consider the terms of the agreement. Those terms may be harsh, especially when, as here, the breach occurred early in the life of the agreement. But the defendant has not shown that in the circumstances they are "unreasonably and grossly disproportionate to the real damages from a breach." *A-Z Servicenter, Inc.* v. *Segall*, 334 Mass. 672, 675 (1956).

damages provisions. See, e.g., *id.* at 494; *A-Z Servicenter, Inc.* v. *Segall*, 334 Mass. 672, 674-675 (1956); *Commissioner of Ins.* v. *Massachusetts Acc. Co.*, 310 Mass. 769, 771 (1942).

[7]We note in passing that there was evidence at trial that NPS in fact had not been able to resell the defendant's seat, some four years after the defendant committed a breach of the agreement. Although *Kelly* v. *Marx*, 428 Mass. 877, 878 (1999), prevents our consideration of this fact, it suggests that it was not unduly pessimistic to think that NPS might have difficulty reselling the defendant's seat in the event of breach.

On appeal, the parties have not raised the issue whether, if the liquidated damages provision is enforced, mitigation should be considered. However, because mitigation was raised (albeit obliquely) in the defendant's amended answer to the complaint,[8] and because we hold that the liquidated damages provision is enforceable, we consider the issue, which appears to be one of first impression in Massachusetts.

We will follow the rule in many other jurisdictions[9] and hold that, in the case of an enforceable liquidated damages provision, mitigation is irrelevant and should not be considered in assessing damages. When parties agree in advance to a sum certain that represents a reasonable estimate of potential damages, they exchange the opportunity to determine actual damages after a breach, including possible mitigation, for the "peace of mind and certainty of result" afforded by a liquidated damages clause. *Kelly* v. *Marx*, 428 Mass. 877, 881 (1999), quoting *Kelly* v. *Marx*, 44 Mass. App. Ct. 825, 833 (1998) (Spina, J., dissenting). In such circumstances, to consider whether a plaintiff has mitigated its damages not only is illogical, but also defeats the purpose of liquidated damages provisions. See *Barrie Sch.* v. *Patch*, 401 Md. 497, 513-514 (2007) (sum that stipulates damages in advance "replaces any determination of actual loss," so that if liquidated damages provision is enforceable, court need not consider mitigation). Since the liquidated damages provision at issue here is enforceable, the question is irrelevant.

*Conclusion.* The ruling of the Superior Court that the liquidated damages provision of the license agreement is unenforceable is set aside, and the judgment is modified to award NPS the total

---

[8]The defendant's amended answer states as an affirmative defense that the agreement was unconscionable because it provided that NPS had no duty to mitigate its damages in the event of a breach.

[9]See, e.g., *Federal Realty Ltd. Partnership* v. *Choices Women's Med. Ctr., Inc.*, 289 A.D.2d 439, 442 (N.Y. 2001); *Lake Ridge Academy* v. *Carney*, 66 Ohio St. 3d 376, 385 (1993); *Cady* v. *IMC Mtge. Co.*, 862 A.2d 202, 219 (R.I. 2002) (applying Florida law). See also 24 S. Williston, Contracts § 65.31, at 364 (4th ed. 2002) ("Since the effect of a stipulated damages provision is to substitute a predetermined amount for actual damages . . . , the existence of an enforceable liquidated damages provision has the effect of making the mitigation of damages irrelevant").

amount of unpaid license fees due under the agreement, $65,500, plus interest. As so modified, the judgment is affirmed.

*So ordered.*