NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-1078

STAG INDUSTRIAL HOLDINGS, LLC

vs.

BLACK SWAN HOLDINGS, LLC.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, Black Swan Holdings, LLC (Black Swan),

appeals from a Superior Court judgment awarding the plaintiff,

Stag Industrial Holdings, LLC (Stag Industrial), damages in an

action on a guaranty executed by Black Swan.  Black Swan

disputes the award of liquidated damages and the award of

posttermination damages stemming from a tenant's obligations

under a lease.  We affirm.

Background.  Stag Industrial, here the commercial landlord,

brought this action in the Superior Court against Black Swan to

enforce an unconditional guaranty by Black Swan of the

obligations of RADG Holdings, LLC (RADG), the tenant under a

commercial lease of premises[1] in Gaffney, South Carolina

_____

[1] The leased premises included a parcel of land and a large warehouse of about 227,000 square feet.

(premises). RADG stopped paying the rent due under the lease in July 2020. Stag Industrial then sued RADG in South Carolina to recover past-due rent and unpaid taxes.

On March 21, 2021, a default judgment entered against RADG in the South Carolina action in an amount equal to the unpaid rent through March 2021 and unpaid property taxes for 2020. Stag Industrial then terminated RADG's lease on March 25, 2021. On April 20, 2021, Stag Industrial filed a complaint in the Suffolk Superior Court against Black Swan, pursuant to the guaranty.[2] On June 23, 2021, Black Swan was defaulted. It is undisputed that Black Swan was properly served, did not answer the complaint, and did not attempt to remove the default or contest liability. Instead, Black Swan's sole challenge was to the damages claimed by Stag Industrial.

While Stag Industrial terminated RADG's lease in March 2021, RADG did not vacate the premises until November 2021. Due to deferred maintenance and damage, Stag Industrial had to make extensive repairs to the premises, at a significant cost, to be able to market and relet the premises to another potential tenant.

---

[2] Stag Industrial is a Massachusetts limited liability company with its principal place of business in Boston. The guaranty states that the "Guarantor [Black Swan] consents to and agrees that the courts of The Commonwealth of Massachusetts shall have personal jurisdiction over the Guarantor for any action brought on this Guaranty."

On March 9, 2022, Stag Industrial elected to invoke the liquidated damages remedy under sections 9.2(c)(i) and (iii) of the lease.[3]  This provision required RADG's payment of "all sums provided for in th[e] Lease" plus "an amount equal to the sum of all of the Rent and other sums due hereunder and payable with respect to the twelve . . . month period next following the date of termination."[4]

---

[3] The liquidated damages clause of the lease stated in relevant part:

> "If this Lease is terminated due to an Event of Default, then Tenant covenants, as an additional cumulative obligation after termination, to pay forthwith to Landlord at Landlord's election made by notice to Tenant at any time after termination, as liquidated damages a single lump sum payment equal to the sum of (i) all sums provided for in this Lease to be paid by Tenant and not then paid at the time of such election, plus either (ii) the present value . . . of the excess of all of the Rent reserved for the residue of the Term over all of the fair market rent reasonably projected by Landlord to be received on account of the Premises during such period, which Rent from reletting shall be reduced by reasonable projections of vacancies and by Landlord's Reletting Expenses described above to the extent not theretofore paid to Landlord, or (iii) an amount equal to the sum of all of the Rent and other sums due hereunder and payable with respect to the twelve . . . month period next following the date of termination.  Because Landlord's damages resulting from Tenant's default and subsequent termination are difficult to ascertain as of the Date of this Lease, the parties agree that the foregoing agreed-to sum represents a reasonable forecast of Landlord's expected damages as a result of Tenant's breach and early termination."

[4] At oral argument, counsel for Stag Industrial confirmed that the twelve-month period ran from March 25, 2021, to March 24, 2022.  Black Swan does not contest this time frame.

On May 24, 2022, and June 2, 2022, a Superior Court judge held an evidentiary hearing on Stag Industrial's request for an assessment of damages.[5]  As noted supra, Black Swan did not challenge the default or otherwise raise any liability defenses under its guaranty.[6]  Accordingly, the judge found that Black Swan, by virtue of the default, was "liable under the Unconditional Guaranty to pay all of RADG's obligations under or related to the Lease, including past due rent, other monies due under the Lease due to RADG's default, liquidated damages, and [Stag Industrial's] reasonable attorneys' fees and litigation expenses."

The judge determined that Stag Industrial was entitled to recover the sum awarded in the South Carolina action in the amount of $578,793.75 plus interest.[7]  He also found that Stag Industrial was entitled to the cost of removing debris and refuse left inside the premises by RADG, which amounted to $149,700.  Furthermore, the judge found that RADG failed to make

---

[5] For a period of "more than six months," Stag Industrial moved for extensions of time to file its motion for an assessment of damages.

[6] The Superior Court judge did not make any factual findings regarding Black Swan's liability under the guaranty.  See Marshall v. Stratus Pharms., Inc., 51 Mass. App. Ct. 667, 670-671 (2001) ("Upon default . . . the factual allegations of a complaint are accepted as true for purposes of establishing liability" [citation omitted]).

[7] This sum is equal to the unpaid rent through March 2021 and unpaid property taxes for 2020 and bears interest from the date of judgment at a rate of 7.25 percent per year.

repairs[8] to the premises as required under the lease[9] and, therefore, Stag Industrial was entitled to the costs of maintenance and repair work, recoverable under the lease and the unconditional guaranty, in the amount of $554,990.46. Finally, the judge found that between April 2021 and March 2022, RADG failed to pay rent totaling $656,718.72, utility costs totaling $76,952.81, and property taxes totaling $127,435. The lease called for a late fee of 5 percent and interest of 1.5 percent per month on all rent and additional rent, which totaled $43,055.33 and $63,321.59, respectively.

In finding that Stag Industrial was entitled to damages pursuant to the lease's liquidated damages remedy, the judge found that Stag Industrial acted within a reasonable timeframe in making its election of the remedy.[10] More importantly, he found that the liquidated damages clause was reasonable and did not constitute a penalty.[11] The judge found this amount to total $656,718.72.

---

[8] These repairs included repainting the exterior of the building, repairing and repaving concrete and parking areas, repairing broken dock doors, and repairing the HVAC and sprinkler systems, as well as repairing plumbing, roofing, and electrical systems.
[9] RADG was required to make these repairs pursuant to section 9.2(a) and (b) of the lease.
[10] The lease stated that Stag Industrial could elect to enforce the liquidated damages clause "at any time after termination."
[11] The judge noted that Stag Industrial would have been entitled to recover more had it elected the alternative remedy under section 9.2(c)(ii) of the liquidated damages clause, pursuant to which the tenant would have to pay all sums provided for in the

In sum, the judge ordered Black Swan to pay Stag Industrial "$578,793.75, plus interest thereon from March 12, 2021[,] at the rate of 7.25 percent; plus $2,328,892.63, with no prejudgment interest to be calculated thereon; plus reasonable attorneys' fees and costs of $76,737.92" for both the South Carolina action and the present action.  Black Swan filed a timely appeal challenging the damages award, asserting that the liquidated damages clause is "disproportionate" to Stag Industrial's actual damages and that the award under the clause otherwise constitutes an impermissible penalty.

Discussion.  1.  Standard of review.  We accept the judge's findings of fact unless they are clearly erroneous.  See Kendall v. Selvaggio, 413 Mass. 619, 620 (1992).  "On the other hand, to ensure that the ultimate findings and conclusions are consistent with the law, we scrutinize without deference the legal standard which the judge applied to the facts."  Id. at 621.  "Whether a liquidated damages provision in a contract is an unenforceable

---

lease not yet paid, plus rent for the remainder of the lease term reduced by the present value and the fair market value of the premises.  Had Stag Industrial elected the liquidated damages remedy under section 9.2(c)(ii), Black Swan could have faced the potential cost of ten years of rent as a liquidated damages remedy.  Like the Superior Court judge, we express no view whether that clause would have been reasonable and enforceable.

penalty is a question of law." NPS, LLC v. Minihane, 451 Mass.
417, 419 (2008). See Manganaro Drywall, Inc. v. Penn-Simon
Constr. Co., 357 Mass. 653, 656 (1970).

2. Analysis. Neither party disputes that Massachusetts is
a proper venue to hear this case under the guaranty. Moreover,
neither party disputes that South Carolina Law governs this
case.[12] However, Black Swan argues that optional liquidated
damages clauses are unenforceable under both Massachusetts law
and South Carolina law, despite conceding that South Carolina
law alone governs the contract, and does not cite any South
Carolina law in its brief to support this proposition.[13] As
Black Swan does not cite to any relevant case law to support the
proposition that optional liquidated damages are unenforceable
under South Carolina law, which governs the lease, this issue is
waived.[14] Stating a claim "in a cursory and conclusory fashion"

---

[12] Section 12.4 of the lease stated that it "shall be governed
and construed . . . in accordance with the laws of the State of
South Carolina." However, while Black Swan states that South
Carolina law controls the lease in its opposition to Stag
Industrial's request for the assessment of damages and default
judgment, Black Swan does not cite any South Carolina law to
challenge the enforceability of the liquidated damages clause.
[13] Black Swan also concedes that there is no binding precedent in
Massachusetts on the issue of optional liquidated damages
clauses.
[14] Although Black Swan cited South Carolina cases in its reply
brief, those cases do not offer support for the proposition that
optional liquidated damages clauses are unenforceable under
South Carolina law. In any event, South Carolina law appears to
contradict Black Swan's claim. See Richman Enters. vs. Pamplin,
U.S. Ct. App., Nos. 95-1142 & 95-1216, slip op. at 11 n.8 (4th

and citing "no legal authority to support the[] claim" constitutes "an insufficient appellate argument" (citations omitted).  McCone v. New England Tel. & Tel. Co., 393 Mass. 231, 236 (1984).  See Mass. R. A. P. 16 (a) (9), as appearing in 481 Mass. 1628.

Even if we were to consider this argument, we discern no basis for reversing the judgment.  It is well settled that "a contract provision that clearly and reasonably establishes liquidated damages should be enforced, so long as it is not so disproportionate to anticipated damages as to constitute a penalty."  TAL Fin. Corp. v. CSC Consulting, Inc., 446 Mass. 422, 431 (2006).  "A liquidated damages provision will usually be enforced provided two criteria are satisfied:  first, that at the time of contracting the actual damages flowing from a breach were difficult to ascertain; and second, that the sum agreed on as liquidated damages represents a 'reasonable forecast of damages expected to occur in the event of a breach.'"  NPS, LLC, 451 Mass. at 420, quoting Cummings Props., LLC v. National Communications Corp., 449 Mass 490, 494 (2007). "Where damages

---

Cir. Mar. 19, 1996) (applying South Carolina law to liquidated damages clause and noting, in relevant part, "[o]ften, the language of the liquidated damages clause is flexibly designed to preserve the option of the non-breaching party to use the liquidated damages remedy or to seek one of the normal remedies for breach" [citation omitted]).

are easily ascertainable, and the amount provided for is grossly disproportionate to actual damages, or unconscionably excessive, the court will award the aggrieved party no more than its actual damages."  NPS, LLC, supra.  As there is "'no bright line separating an agreement to pay a reasonable measure of damages from an unenforceable penalty clause' . . . the reasonableness of the measure of anticipated damages depends on the circumstances of each case."  Id., quoting TAL Fin. Corp., supra.  In determining whether the liquidated damages provision is reasonable, "we look to the circumstances at the time of contract formation."[15]  NPS, LLC, supra.  The burden of showing that a liquidated damages provision is unenforceable lies with the party challenging enforcement of the provision.  See id. See also TAL Fin. Corp., supra at 423.

In the present case, Black Swan argues that the liquidated damages clause in the lease is unenforceable because anticipated damages were ascertainable at the creation of the lease, and

---

[15] A recent Supreme Judicial Court opinion, Cummings Props., LLC v. Hines, 492 Mass. 867, 873 (2023), reaffirms that liquidated damages clauses must be assessed by looking at the circumstances at the time of contract formation:

> "We remain convinced that where a contract is unambiguous and freely entered into, it is preferable for parties to bargain with one another as they see fit, rather than to have courts step in to decide whether and how to restructure a contract because certain contingencies were not accounted for by one of the parties."

that "the damages sought pursuant to the liquidated damages clause were excessive so as to amount to double recovery." Stag Industrial contends that Black Swan "did not put forth any evidence that the parties to the Lease intended the Liquidated Damages to serve as a penalty."

We agree with Stag Industrial that Black Swan has not met its burden to show that the liquidated damages clause is unenforceable and that the liquidated damages amount is excessive. First, Black Swan has not shown that the liquidated damages clause was so unreasonable as to constitute a penalty. Black Swan provided no evidence to suggest that at the time of contract formation, potential damages were easily ascertainable, or that the clause was not a reasonable forecast of damages expected to occur in the event of a breach. To the contrary, the lease stated: "Because Landlord's damages resulting from Tenant's default and subsequent termination are difficult to ascertain as of the Date of this Lease, the parties agree that the foregoing agreed-to sum represents a reasonable forecast of Landlord's expected damages as a result of Tenant's breach and early termination."

Second, the sum provided for in the Lease is not "grossly disproportionate to actual damages," nor is it "unconscionably excessive." NPS, LLC, 451 Mass. at 420. To the extent that the sum represented the amount due under the lease as of the date of

election and a sum equal to at least one year of rent that would have been due over the twelve months following termination of the lease, it appears to be a reasonable anticipation of damages that might accrue from the nonpayment of rent.  See Cummings Props., LLC v. Hines, 492 Mass. 867, 873 (2023) (liquidated damages clause requiring of payment of entire balance of rent due was reasonable under circumstances presented); NPS, LLC, supra at 422 (liquidated damages clause requiring payment of balance of all years remaining on contract was reasonable). Here, damages were difficult to estimate at the outset, and Black Swan is required to pay less than the total amount it would have paid had RADG complied with the lease obligations. "The sum provided for therefore bears a reasonable relationship to the anticipated actual damages resulting from a breach." NPS, LLC, supra.

Further, the liquidated damages clause anticipated a scenario that occurred in the present circumstances -- Stag Industrial's inability to relet the premises following termination of the lease.  Indeed, at the evidentiary hearing, Stag Industrial's representative testified that the premises was still vacant, and that even if Stag Industrial was successful in leasing the premises, "rent would not be paid until . . . some point in 2023."  Given this fact, actual damages would far exceed the liquidated damages amount.  As the judge highlighted

in his findings, Stag Industrial's election of section 9.2(c)(iii) under the liquidated damages clause, requiring payment of twelve months rent in addition to payment of all sums provided for in the lease under section 9.2(c)(i), constituted an amount significantly lower than Stag Industrial's projected actual damages.[16]

Finally, Black Swan contends that the judge erred in awarding Stag Industrial posttermination damages resulting from Stag Industrial's demand that RADG remove warehouse racking from the premises and Stag Industrial's deferred maintenance and repairs.  Black Swan argues that the racking removal and deferred maintenance were not supported by the lease; that the expense of the racking removal and deferred maintenance was excessive; and that Stag Industrial failed to mitigate its damages.[17]

In terms of the racking removal and deferred maintenance, section 6.9 of the lease required RADG, upon vacating the premises, to "remove . . . fixtures and personal property," and to "repair[] damage to the Premises which results in the course of such removal and restoring the Premises to a fully functional

---

[16] As discussed supra, had Stag Industrial elected to enforce section 9.2(c)(ii), the liquidated damages amount could have been significantly larger.  See note 11, supra.
[17] Black Swan again failed to cite any relevant South Carolina law, which controls the lease, in support of this claim.

and tenantable condition."  If RADG failed to remove such property, section 6.9 of the lease required RADG to "pay to [Stag Industrial] the reasonable cost and expense incurred by [Stag Industrial] in effecting such removal and . . . in making any required prepares to the Premises."  The lease thus established RADG's responsibilities and consequent damages if those responsibilities were not fulfilled.  The language of the lease was clear, and the judge did not err in concluding that the expenses of the racking removal and deferred maintenance were not excessive.  See, e.g., Balles v. Babcock Power Inc., 476 Mass. 565, 571 (2017) ("when the language of a contract is clear, it alone determines the contract's meaning").

We also disagree with Black Swan's claim that Stag Industrial presented no evidence of any effort to mitigate damages.  Initially, this argument fails because "the burden of proving that losses could have been avoided by reasonable efforts rests with the party in breach," American Mechanical Corp. v. Union Mach. Co. of Lynn, 21 Mass. App. Ct. 97, 103 (1985), here Black Swan as the guarantor for RADG.  Moreover, Black Swan presented no evidence to demonstrate that Stag Industrial failed to mitigate damages.  Black Swan's claim, in this regard, is thus conclusory and speculative.  By contrast, there was evidence that Stag Industrial terminated the lease in March 2021, but RADG did not vacate the premises until November

2021.  As a result, Stag Industrial was forced to "clean up and repair the building to get [it] in a condition to be relet and marketed" and thus was unable to advertise the premises for the purpose of reletting or selling it until 2022.  In view of these facts, and without contrary evidence adduced by Black Swan, the failure to mitigate claim fails on the record before us.[18]

Judgment affirmed.

By the Court (Neyman, Henry & Ditkoff, JJ.[19]),

Assistant Clerk

Entered:  January 31, 2024.

---

[18] Stag Industrial is entitled to an award of attorney's fees pursuant to the guaranty.  It may submit an application for fees and costs, with supporting documentation, to this court within fourteen days of the date of rescript.  See Fabre v. Walton, 441 Mass. 9, 10-11 (2004).  Black Swan shall have fourteen days thereafter to respond.  Black Swan's request for attorney's fees and costs is denied.

[19] The panelists are listed in order of seniority.